EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| St. James Security Services, LLC<br><br>Recurrida<br><br>v.<br><br>Autoridad de Energía Eléctrica;<br>O'Neil Security Systems<br><br>Peticionarios | Certiorari<br><br>2023 TSPR 149<br><br>213 DPR ___ |

Número del Caso: CC-2022-0796

Fecha: 22 de diciembre de 2023

Tribunal de Apelaciones:

      Panel III

Abogados de la parte peticionaria:

      Lcdo. Juan R. González Galarza
      Lcda. Joselyn K. Rodríguez González

Abogados de la parte recurrida:

      Lcdo. Carlos A. Steffans Guzmán
      Lcdo. Anthony A. Maceira Zayas

Materia: Derecho Administrativo – Servicios de vigilancia y protección que se exigen en las facilidades de la Autoridad de Energía Eléctrica deben considerarse servicios profesionales para efectos de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

St. James Security Services,
LLC

   Recurrida                   CC-2022-0796      *Certiorari*

      v.

Autoridad de Energía Eléctrica;
O´Neil Security Systems

    Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 22 de diciembre de 2023.

En el presente caso nos corresponde determinar si, debido a determinados requerimientos estatales y federales, ciertos servicios de vigilancia y protección que se exigen en las facilidades de la Autoridad de Energía Eléctrica deben considerarse servicios profesionales.

Adelantamos que, tras un ponderado y cuidadoso análisis del expediente ante nuestra consideración, así como de las disposiciones legales y jurisprudenciales aplicables, hemos llegado a la conclusión de que los referidos servicios, en efecto, son servicios profesionales y, como consecuencia de

ello, en los trámites relacionados con los mismos, -- particularmente, lo relacionado a los procesos de subastas o requerimiento de propuestas, y sus respectivas revisiones administrativas y judiciales --, le es de aplicación lo dispuesto en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *infra*. Veamos.

I.

Allá para el 9 de noviembre de 2021, la Autoridad de Energía Eléctrica de Puerto Rico (en adelante, "AEE") publicó en ciertos boletines el *Request for Proposal (RFP)* o requerimiento de propuestas número 00003252 (en adelante, "RFP"). Esto tenía la intención de recibir propuestas para servicios de vigilancia y seguridad en diversas instalaciones pertenecientes a la referida corporación pública.

Así las cosas, y luego de transcurrido el término para que los interesados en ofertar aclararan sus dudas sobre el alcance de los servicios solicitados, el 1 de diciembre de 2021 se llevó a cabo la apertura del RFP. En ese contexto, comparecieron como licitadores diversas compañías que se dedican a ofrecer los servicios de vigilancia y seguridad requeridos, entre las cuales se encontraba St. James Security Services, LLC (en adelante, "St. James Security").

Habiendo comparecido los licitadores interesados, el 8 de diciembre de 2021 el Comité Técnico Evaluador de la AEE emitió el *Informe [de] evaluación técnica [de los] servicios de vigilancia y protección [en la] región norte – subasta 00003252* de rigor. En éste, los miembros del mencionado

Comité realizaron una primera evaluación de las propuestas presentadas y proveyeron su recomendación al Comité de Subastas de la AEE.

A esos efectos, en el *Informe* en cuestión se hizo constar que los servicios a contratar eran requeridos en,

> **la Región Norte [que] incluyen las Centrales Palo Seco, Cambalache y San Juan. La seguridad de estas instalaciones[,] por su naturaleza[,] es compleja y [además] ambas instalaciones están reguladas por el Código de Regulación Federal, Título 33. El cumplir con esta regulación requiere que la compañía de seguridad seleccionada asuma mayor responsabilidad al ofrecer sus servicios de vigilancia y protección. Además, requiere que el personal de seguridad seleccionado para ofrecer los servicios tenga mayor preparación, experiencia y capacidad de especialización en los estándares de seguridad establecidos en el Plan de Seguridad de la Facilidad (*Facility Security Plan*).** El Oficial (*Facility Security Officer*) asignado a la central es responsable de la implementación y cumplimiento del plan de seguridad. La Guardia Costera evalúa el cumplimiento de esta regulación. Apéndice de la *Petición de certiorari*, pág. 3. (Énfasis nuestro).

Así pues, y tras una evaluación integral de las diversas propuestas, el Comité Técnico Evaluador de la AEE recomendó a la compañía St. James Security para ofrecer los servicios de vigilancia y seguridad antes reseñados. Hizo lo anterior, aun cuando el precio cotizado por la referida compañía de seguridad fue de un quince por ciento (15%) mayor al costo estimado por la corporación pública, y mayor al propuesto por otros tres licitadores.

De otra parte, el 8 y 9 de diciembre de 2021 el Comité de Subasta de la AEE se reunió para evaluar las propuestas presentadas y el *Informe* del Comité Técnico Evaluador al que hemos hecho referencia. Tras realizar el mencionado

ejercicio, el Comité de Subasta de la AEE otorgó la buena pro de la subasta para servicios de vigilancia y seguridad al postor que ofreció los servicios al menor costo, entiéndase, Bridge Security Services, Inc., no siendo escogida St. James Security.

Determinado lo anterior, el 15 de diciembre de 2021 la AEE notificó la adjudicación de la subasta para los servicios de vigilancia y seguridad tanto al licitador agraciado, como a los no agraciados. De igual forma, en la referida notificación se informó sobre el derecho que tenían las partes para, de así entenderlo necesario, solicitar revisión de la determinación tomada por la mencionada corporación pública, haciendo alusión en ella a lo dispuesto en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, *infra*, (en adelante, "LPAU") y al Reglamento de Subastas de la Autoridad de Energía Eléctrica, Reglamento Núm. 8518 de 10 de septiembre de 2014, en relación con los procesos de revisión administrativa y revisión judicial. En específico, la referida notificación expresaba que:

> **Cualquier parte adversamente afectada por la presente decisión final podrá presentar una Moción de Reconsideración luego de cumplir con las disposiciones del Capítulo IV, Artículo C del Reglamento de Subastas de la Autoridad de Energía Eléctrica y las disposiciones aplicables de la Ley 38-2017 (conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico), incluyendo, pero no limitado a la Sección 3.19 de la Ley 38-2017. La moción de reconsideración debe ser presentada dentro del término de veinte (20) días calendario contados a partir del depósito en el correo federal o correo electrónico de la notificación de**

**adjudicación de la subasta.** La moción de reconsideración debe presentarse en la Secretaría de Procedimientos Adjudicativos, 8vo piso, Edificio NEOS, parada 16 ½, Santurce, Puerto Rico o enviarse al PO Box 363928, San Juan, PR 00936-3928. Las razones de la reconsideración deberán estar claramente establecidas y también deberán contener una certificación de haberse enviado copia de la moción de reconsideración a los demás licitadores comparecientes en la subasta.

**La Autoridad de Energía Eléctrica considerará la Moción de Reconsideración dentro de los treinta (30) días de haberse presentado y podrá extender dicho término una sola vez, por un término adicional de quince (15) días calendario. Si se tomare alguna determinación en su moción de reconsideración, el término para solicitar revisión judicial empezará a contarse desde la fecha en que se depositó en el correo federal copia de la notificación de la decisión de la Autoridad de Energía Eléctrica resolviendo la moción de reconsideración. Si la Autoridad de Energía Eléctrica no toma alguna acción en relación con la Moción de Reconsideración dentro del término correspondiente según mencionado en la Ley 38-2017, se entenderá que ésta ha sido rechazada de plano y a partir de esa fecha comenzará a correr el tiempo para la revisión judicial.**

La parte adversamente afectada con relación a su reconsideración por una orden o resolución final de la Autoridad podrá presentar una solicitud de revisión judicial a tenor con la sección 4.2 de la Ley 38-2017 ante el Tribunal de Apelaciones dentro del término de veinte (20) días, contados a partir del archivo en autos de la copia de la notificación de la determinación final de la Autoridad o **dentro del término aplicable de veinte (20) días calendario de haber transcurrido el plazo dispuesto en la Sección 3.19 de la Ley 38-2017.** La mera presentación de una solicitud de revisión al amparo de la Sección 4.2 de la Ley 38-2017 no tendrá el efecto de paralizar la adjudicación de la subasta impugnada. (Énfasis nuestro). Apéndice de la *Petición de certiorari*, págs. 177-178.[1]

---

[1] Cabe señalar, que la Ley Núm. 110-2022 enmendó la LPAU para así uniformar el referido estatuto con la Ley Núm. 73-2019, *infra*, disminuyendo los términos que tienen las partes afectadas para solicitar reconsideración o revisión administrativa en los procesos de adjudicación de subastas y solicitudes de propuestas.

A raíz de la referida notificación, el 23 de diciembre de 2021 St. James Security presentó una *Solicitud de reconsideración* ante la Secretaría de Procedimientos Adjudicativos de la AEE. En síntesis, -- y mediante el proceso establecido en la LPAU, según le fue informado en la notificación de adjudicación emitida el 15 de diciembre de 2021 --, la referida compañía de seguridad buscaba impugnar la adjudicación de la subasta en cuestión.

En el interín, y aún sin respuesta alguna por parte de la Secretaría de Procedimientos Adjudicativos de la AEE a su moción de reconsideración, el 4 de enero de 2022 St. James Security presentó, de igual forma, una *Solicitud de Revisión* ante la Junta Revisora de Subasta de la Administración de Servicios Generales (en adelante, "Junta Revisora de la ASG"). En esta ocasión, y por primera vez, la mencionada empresa arguyó que la notificación del 15 de diciembre de 2021, -- en la cual la AEE informaba todo lo relacionado a la adjudicación de la subasta para servicios de vigilancia y seguridad --, fue una defectuosa e insuficiente, lo anterior, en violación al debido proceso de ley de los licitadores que comparecieron a la subasta. Esto, se debió a que, a su juicio, la referida corporación pública no cumplió con lo exigido en la Ley de la Administración de Servicios Generales para la Centralización de las Compras en el Gobierno de Puerto Rico de 2019, Ley Núm. 73-2019, *infra,* (en adelante, "Ley de Compras de ASG") sobre los procesos de revisión administrativa y revisión judicial, por lo que dicha

notificación fue nula y nunca surtió efecto, por tratarse de servicios no profesionales.

Regresando a lo relacionado al proceso de reconsideración ante la AEE, -- y sesenta y dos (62) días luego de presentar su moción de reconsideración ante la referida corporación pública --, el 23 de febrero de 2022 St. James Security compareció ante el Tribunal de Apelaciones mediante un *Recurso de revisión de decisión administrativa*. En síntesis, ésta realizó argumentos similares a los presentados ante la Junta Revisora de la ASG sobre la deficiencia en la notificación realizada en la adjudicación de la subasta, toda vez que para St. James Security se incumplió con lo dispuesto en la Ley de Compras de ASG.

Por su parte, el 23 de mayo de 2022 la AEE compareció ante el foro apelativo intermedio mediante una *Solicitud de desestimación*. En esencia, la referida corporación pública arguyó que el Tribunal de Apelaciones carecía de jurisdicción para atender la revisión judicial presentada, toda vez que St. James Security presentó su recurso fuera del término que establece la LPAU para ello.[2]

---

[2] En particular, la AEE arguyó que el 15 de diciembre de 2021 la referida corporación pública adjudicó el RFP aquí en controversia en el cual St. James Security no fue favorecida. Inconforme con dicha determinación, el 23 de diciembre de 2021, es decir, dentro del término de veinte (20) días, según dispuesto en la Sección 3.19 de la LPAU, *infra,* St. James Security presentó su recurso de revisión ante la Secretaría de Procedimientos Adjudicativos de la AEE. Así las cosas, transcurrido el término de treinta (30) días que tenía la AEE para considerar el recurso de revisión administrativa presentado por St. James Security, -- sin que ésta emitiera determinación alguna --, el 24 de enero de 2022 comenzó a transcurrir el término de veinte (20) días que tenía la referida empresa para acudir en revisión judicial al Tribunal de Apelaciones,  según se establecía en ese momento en la Sección 3.19  y la Sección 4.2 de la LPAU, *infra.* El término antes señalado venció el 14 de febrero de 2022

En oposición, el 13 de junio de 2022 St. James Security presentó una *Moción en cumplimiento de orden, oposición a solicitud de desestimación, moción para que se tenga por sometida y sin oposición el recurso de revisión*. En ésta, argumentó que la AEE omitió en su petición de desestimación la aplicabilidad al proceso de RFP aquí en controversia de la Ley de Compras de ASG. Por lo que, a su entender, -- al no ser de aplicación al presente caso lo contemplado en la LPAU --, el recurso de revisión fue presentado dentro del término jurisdiccional establecido en la Ley de Compras de ASG, entiéndase un término de veinte (20) días jurisdiccionales pasados los treinta (30) días desde la presentación de la *Solicitud de Revisión* ante la Junta Revisora de la ASG sin que ésta emitiera una determinación.

Tras analizar los alegatos de ambas partes, el 21 de julio de 2022 el Tribunal de Apelaciones emitió una *Sentencia* en la cual desestimó el recurso de revisión presentado por St. James Security por falta de jurisdicción. Lo anterior surge al foro apelativo intermedio concluir que la presentación del recurso fue prematura, pues la notificación de adjudicación de la subasta en cuestión adolecía de defectos relacionados a las disposiciones sobre revisión administrativa y revisión judicial establecidas en la Ley de

---

y no fue hasta el 23 de febrero de 2022, -- diez (10) días luego de que venciera el término --, que St. James Security presentó su recurso ante el Tribunal de Apelaciones. Por lo anterior, la AEE solicitó la desestimación del recurso de revisión judicial presentado por St. James Security ante el foro apelativo intermedio por falta de jurisdicción.

Compras de ASG. Así pues, sentenció que los términos aplicables no habían comenzado a transcurrir.

Insatisfecho con el dictamen del Tribunal de Apelaciones, y tras ser denegada la solicitud de reconsideración por el mencionado foro apelativo, el 28 de noviembre de 2022 compareció ante nos la AEE mediante una *Petición de certiorari*. En síntesis, arguye que el foro apelativo intermedio erró al determinar que, en lo relacionado a los procesos de revisión administrativa y revisión judicial objetos del presente litigio, le es de aplicación las disposiciones de la Ley de Compras de ASG y no lo establecido en la LPAU y, en consecuencia, al no considerar su planteamiento de falta de jurisdicción al presentarse el recurso de revisión fuera del término contemplado en esta última disposición legal. Así pues, nos solicita que revoquemos la determinación emitida por el Tribunal de Apelaciones por no ser aplicable aquí el referido estatuto de la ASG.

En oposición, el 26 de mayo de 2023 compareció ante nos St. James Security mediante su *Alegato de la parte recurrida*. En esencia, arguye que la determinación del Tribunal de Apelaciones fue una correcta en derecho.

A juicio de la referida empresa, la notificación emitida el 15 de diciembre de 2021 por parte de la AEE, -- con relación a la adjudicación del RFP para servicios de seguridad y vigilancia --, no cumplió con la Ley de Compras de ASG, por lo que nunca surtió efecto. **En específico, St.**

**James Security argumenta, similar a como lo hizo ante la ASG, que la referida Ley de Compras de ASG es aplicable a la AEE debido a que los servicios solicitados por el RFP son no profesionales y, aun cuando la AEE es una entidad exenta según establece la ley, tiene que cumplir con los procedimientos allí establecidos.** Por tal razón, nos solicita que confirmemos la determinación del foro apelativo intermedio.

Expedido el recurso el 24 de febrero de 2023, y recibidos los alegatos de las partes, el 30 de mayo de 2023 notificamos a todas las partes con interés en el litigio que el caso quedó sometido en los méritos.

Trabada así la controversia, y con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa que gobierna los asuntos ante nuestra consideración.

II.

A.

Como es sabido, en nuestra jurisdicción, la contratación gubernamental de todo tipo de servicios está revestida del más alto interés público, pues persigue fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado. *SLG Ortiz-Mateo v. ELA*, 2023 TSPR 43, 211 DPR __ (2023); *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *ECA Gen. Contrac. v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018). Con el fin de lograr lo antes mencionado, el gobierno utiliza los procedimientos de subasta o RFP como mecanismo de

adquisición de bienes y servicios, para así proteger el erario y garantizar que se realicen sus funciones administrativas responsablemente. *Trans Ad de P.R. v. Junta de Subastas*, 174 DPR 56, 66 (2008); *Marina v. Comisión*, 170 DPR 847, 854 (2007). Véase, *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531 (2019).

En cuanto al proceso de RFP, hemos expresado que éste "se destaca por ser un procedimiento informal y flexible que permite al oferente negociar con el gobierno y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios". *PR Eco Park et al. v. Mun. de Yauco*, *supra*, págs. 531-532. Véase, *R & B Power v. E.L.A.*, 170 DPR 606, 621 (2007). **Esto se debe a que se recurre a este procedimiento cuando se trata de la adquisición de bienes o servicios especializados que involucran asuntos altamente técnicos y complejos, o cuando existen escasos competidores cualificados**. *ECA Gen. Contrac. v. Mun. de Mayagüez, supra,* pág. 674*; CD Builders v. Mun. Las Piedras, 196 DPR 336, 345 (2016); R & B Power v. E.L.A.*, *supra*, págs. 621-622.

Asimismo, este Tribunal ha sentenciado que las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración, de acuerdo con los parámetros establecidos por la ley y los reglamentos aplicables. *CD Builders v. Mun. Las Piedras*, *supra; Aut. Carreteras v. CD Builders, Inc.,* 177 DPR 398, 408 (2009);

*A.E.E. v. Maxon*, 163 DPR 434, 444 (2004). Lo anterior, se debe a que, en el ejercicio de sus facultades, -- y por su conocimiento experto --, a las agencias "se les reconoce discreción al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general". *CD Builders v. Mun. Las Piedras, supra,* pág. 349. Véase, *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 779 (2006).

Como consecuencia de ello, los tribunales no debemos intervenir con la adjudicación de una subasta o el rechazo de una propuesta, salvo que la determinación administrativa adolezca de un abuso de discreción, arbitrariedad o irracionabilidad. *CD Builders v. Mun. Las Piedras, supra,* pág. 349; *Aut. Carreteras v. CD Builders, Inc., supra*, pág. 408; *Empresas Toledo v. Junta de Subastas, supra*, págs. 783-784. En ausencia de estos elementos, "ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La cuestión debe decidirse a la luz del interés público". (Cita depurada). *Caribbean Communications v. Pol. De P.R.,* 176 DPR 978, 1006 (2009). Véase, *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886, 898 (2007); *Great Am. Indem. Co. v. Gobierno de la Capital*, 59 DPR 911, 916 (1942).

B.

De otra parte, cabe destacar que "[e]l derecho a cuestionar [cierta] adjudicación de una subasta mediante el proceso de revisión judicial es parte del debido proceso de ley".[3] *PVH Motor v. ASG, supra,* pág. 132. Véase, *PR Eco Park et al. v. Mun. de Yauco*, *supra*. Por lo tanto, para poder ejercer su derecho, es indispensable que las notificaciones que se realicen durante estos procesos sean efectuadas correctamente a todas las partes. *PVH Motor v. ASG, supra,* pág. 132; *PR Eco Park et al. v. Mun. de Yauco*, *supra*; *IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30, 35 (2000). En específico, "se debe advertir del derecho de las partes a procurar la revisión judicial; el término disponible para hacerlo y la fecha del archivo en autos de una copia de la notificación". *PVH Motor v. ASG, supra,* pág. 132. Véase, *IM Winner, Inc. v. Mun. de Guayanilla*, *supra*.

---

[3] Como es sabido, el Artículo II, Sección 7, de la Constitución del Estado Libre Asociado de Puerto Rico prohíbe que cualquier persona sea privada de su libertad o propiedad sin un debido proceso de ley. LPRA, Tomo 1, ed. 2023, pág. 305. Al examinar el alcance de la mencionada cláusula constitucional, este Tribunal ha sentenciado que la doctrina del debido proceso de ley tiene dos (2) acepciones: la sustantiva y la procesal. *PVH Motor v. ASG*, 209 DPR 122, 130 (2022); *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 35 (2010).

En específico, hemos establecido que la vertiente sustantiva del debido proceso de ley busca proteger y salvaguardar los derechos fundamentales de las personas, mientras que su vertiente procesal obliga al Estado a garantizar que la interferencia en los intereses de libertad y propiedad del individuo se haga mediante un proceso justo e imparcial. *PVH Motor v. ASG, supra; Fuentes Bonilla v. ELA et al., supra; Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881, 887-888 (1993). Estas garantías constitucionales se extienden, -- además de al ámbito judicial --, a los procesos administrativos. *PVH Motor v. ASG, supra; Fuentes Bonilla v. ELA et al., supra; Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012); *Báez Díaz v. E.L.A.,* 179 DPR 605, 623 (2010).

A esos efectos, hemos sentenciado que una notificación defectuosa de una determinación tomada por las agencias administrativas priva de jurisdicción al foro revisor para entender el asunto en disputa, lo que impide que comience a transcurrir el término para recurrir de cualquier determinación administrativa y, consecuentemente, violenta el derecho al debido proceso de ley de la parte afectada. *PVH Motor v. ASG, supra,* pág. 132; *PR Eco Park et al. v. Mun. de Yauco*, *supra*, pág. 538; *Toro Alvarado v. Madera Atiles*, 202 DPR 495, 502 (2019).

C.

Establecido lo anterior, es menester recordar aquí que es la LPAU, Ley Núm. 38-2017 (3 LPRA sec. 9601 *et seq*.), el cuerpo legal que "codifica las pautas mínimas que deben garantizar las agencias administrativas cobijadas por ese estatuto". *ACT v. PROSOL et als.*, 210 DPR 897, 907 (2022). Véase, *Fonte Elizondo v. F & R Const.*, 196 DPR 353, 358 (2016). **Entre las agencias administrativas cobijadas por la LPAU se encuentran las corporaciones públicas, como lo es la AEE, una de las partes en el presente litigio.** 3 LPRA sec. 9603.

En lo pertinente al asunto que nos ocupa, es la Sección 3.19 de la LPAU, *infra*, la que establece todo lo relacionado al procedimiento y término que tiene una parte, que ha sido afectada en un proceso de adjudicación de subasta o RFP, para solicitar la reconsideración o revisión administrativa de dicho dictamen, de entenderlo necesario. La referida sección,

según vigente al momento de los hechos ante nuestra

consideración, establecía que:

> Los procedimientos de adjudicación de subastas serán informales; su reglamentación y términos serán establecidos por las agencias, pero siempre en estricto cumplimiento con la legislación sustantiva que aplica a las compras del Gobierno de Puerto Rico y sin menoscabo de los derechos y obligaciones de los licitadores bajo la política pública y leyes vigentes en la jurisdicción de Puerto Rico. **La parte adversamente afectada por una decisión podrá, dentro del término de veinte (20) días a partir del depósito en el correo federal o correo electrónico notificando la adjudicación de la subasta, presentar una moción de reconsideración ante la agencia. En la alternativa, podrá presentar una solicitud de revisión ante la Junta Revisora de la Administración de Servicios Generales o la entidad apelativa que corresponda en ley o reglamento, dentro del término de veinte (20) días calendario, a partir del depósito en el correo federal o correo electrónico notificando la adjudicación de la subasta. La agencia o la Junta Revisora deberá considerarla dentro de los treinta (30) días de haberse presentado.** La Junta podrá extender dicho término una sola vez, por un término adicional de quince (15) días calendario. Si se tomare alguna determinación en su consideración, el término para instar el recurso de revisión judicial empezará a contarse desde la fecha en que se depositó en el correo federal o correo electrónico copia de la notificación de la decisión de la agencia, la entidad apelativa o la Junta Revisora resolviendo la moción. **Si la agencia, la entidad apelativa o la Junta Revisora dejare de tomar alguna acción con relación a la moción de reconsideración o solicitud de revisión, dentro del término correspondiente, según dispuesto en este capítulo, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial.** (Énfasis nuestro). 3 LPRA sec. 9659.[4]

---

[4] Recalcamos que la Ley Núm. 110-2022 enmendó la LPAU con la intención de uniformar ésta con la Ley Núm. 73-2019, *infra*, disminuyendo los términos que tienen las partes afectadas por una determinación dentro del proceso de subastas. Por tal razón, la LPAU vigente al momento de los hechos era la enmendada por la Ley Núm. 150-2020.

Tras ese proceso de revisión administrativa, la Sección 4.2 de LPAU, *infra*, establece lo pertinente en cuanto al derecho de las partes a solicitar revisión judicial, bien sea luego de la correspondiente revisión administrativa, o cuando la agencia dejare de tomar alguna acción en cuanto a la antes mencionada revisión. En específico, la referida sección establece que:

> **En los casos de impugnación de subasta, la parte adversamente afectada por una orden o resolución final de la agencia, de la [J]unta Revisora de Subastas de la Administración de Servicios Generales, o de la entidad apelativa de subastas, según sea el caso, podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones dentro de un término de veinte (20) días, contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia, la referida Junta Revisora de Subastas de la Administración de Servicios Generales o la entidad apelativa, o dentro del término aplicable de veinte (20) días calendario de haber transcurrido el plazo dispuesto por la Sección 3.19 de esta Ley.** La mera presentación de una solicitud de revisión al amparo de esta Sección no tendrá el efecto de paralizar la adjudicación de la subasta impugnada. (Énfasis nuestro). 3 LPRA sec. 9672.

Como se puede apreciar, tanto en la Sección 3.19, como en la Sección 4.2 de la LPAU, *supra*, se disponen los procesos que deberá seguir toda parte que desee solicitar reconsideración de una determinación de adjudicación de un RFP o requerimiento de propuestas. Ahora bien, las referidas secciones también establecen que el mencionado proceso de revisión administrativa deberá realizarse "ante la Administración de Servicios Generales o ante la entidad gubernamental correspondiente". 3 LPRA sec. 9659.

Dicho ello, nos corresponde, pues, determinar cuál es el foro al que se debe acudir para la revisión de una adjudicación de requerimiento de propuestas para servicios de vigilancia y seguridad que hace la AEE, como la que es objeto del presente litigio. Para esto, debemos en primera instancia, examinar detenida y cuidadosamente los deberes y las facultades de la ASG. Emprendemos dicha tarea.

D.

**Sabido es que la ASG es una entidad gubernamental creada con el propósito de "implementar la política pública relativa a la adquisición de bienes y servicios <u>no profesionales</u> del Gobierno de Puerto Rico".** (Negrillas suplidas). *Exposición de Motivos*, Ley de Compras de ASG, 3 LPRA secs. 9831 *et seq*.

Sobre el alcance del referido estatuto, el Artículo 3 de la Ley de Compras de ASG, *infra*, establece que:

> **Las disposiciones de esta Ley regirán los procesos de compras y subastas de bienes, obras y <u>servicios no profesionales</u> en todas las Entidades Gubernamentales y las <u>Entidades Exentas</u>.** La Rama Judicial, la Asamblea Legislativa, la Universidad de Puerto Rico y los municipios podrán, de forma voluntaria, adoptar los procesos de compras y subastas de bienes, obras y servicios aquí establecidos, a través de la Administración de Servicios Generales.
>
> Las Entidades Gubernamentales, según definidas en esta Ley, realizarán todas las compras y subastas de bienes, obras y servicios no profesionales a través de la Administración de Servicios Generales, sin excepción alguna.
>
> En el caso de Entidades Exentas, según definidas en esta Ley, no estarán obligadas a realizar sus compras y subastas de bienes, obras y servicios no profesionales a través de la Administración de Servicios Generales, mientras se encuentre en vigencia el Plan Fiscal correspondiente, sin embargo, vendrán obligadas a adoptar los métodos

de licitación y compras excepcionales y a seguir los procedimientos aquí establecidos al momento de realizar sus compras y subastas de bienes, obras y servicios no profesionales. Una vez culmine la vigencia del Plan Fiscal correspondiente, si aplica, serán consideradas como Entidades Gubernamentales, según definidas en esta Ley, y vendrán obligadas a realizar sus compras a través de la Administración. 3 LPRA sec. 9831b.

El Artículo 4 de la Ley de compras de ASG, *supra*, por su parte, define servicios profesionales y no profesionales de la siguiente manera:

hh) **Servicios no profesionales: Aquellos servicios que no son ofrecidos por una persona natural o jurídica con conocimientos o habilidades especializadas a quien se le requiere poseer un título universitario o licencia que lo acredite como profesional especializado.**

ii) **Servicios profesionales: Aquellos servicios que son ofrecidos por una persona natural o jurídica con conocimientos o habilidades especializadas a quien se le requiere poseer un título universitario o licencia que lo acredite como profesional especializado; o cuya prestación principal consiste en el producto de la labor intelectual, creativa o artística, o en el manejo de destrezas altamente técnicas o especializadas.** (Énfasis nuestro). 3 LPRA sec. 9831c.

Sobre este particular, cabe destacar que, en el pasado, hemos señalado que "un servicio profesional conlleva una vocación, llamado, ocupación o empleo que supone, además, algún tipo de conocimiento, labor o destreza especializada". *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271, 280 (2015). Véase, *Rivera Matos v. Estado Libre Asociado De Puerto Rico*, 204 DPR 1010, 1022 (2020). Además, hemos sentenciado que los "servicios profesionales no se limita[n] a profesiones tradicionales tales como abogados, médicos, arquitectos e ingenieros". *Íd.*

Por último, y por considerarlo en extremo importante para la correcta disposición de las controversias ante nuestra consideración, debemos definir qué se considera una entidad exenta para fines de la Ley de Compras de ASG, *supra*. En esa dirección, el Artículo 4 de la referida disposición legal, en su inciso (o), establece que una entidad exenta, para propósitos de esta ley es,

> **[una] Entidad Gubernamental que no viene obligada a realizar sus compras a través de la Administración, ya sea por razón de operar bajo lo dispuesto en un plan fiscal vigente** o por tratarse de entidades fiscalizadoras de la integridad del servicio público y la eficiencia gubernamental. **Para propósitos de esta Ley, se considerarán entidades exentas las siguientes: […] Autoridad de Energía Eléctrica** […].
>
> No obstante, las entidades exentas tienen que realizar sus procesos de licitación acogiendo los métodos de licitación establecidos en esta Ley. Además, las mismas deben acogerse a las categorías previamente licitadas y contratos otorgados por la Administración de Servicios Generales. (Énfasis nuestro). 3 LPRA sec. 9831c.

Evaluada la normativa antes expuesta, queda patentemente claro que aquellas entidades exentas que deseen adquirir servicios no profesionales deberán acoger los métodos establecidos en la Ley de Compras de ASG. Por el contrario, la referida disposición legal no le es de aplicación a aquellas entidades exentas que vayan a adquirir algún servicio profesional. En esta ocasión, la AEE requirió servicios de vigilancia y seguridad particulares, debido a las exigencias locales y federales que regulan las facilidades donde se brindarían los servicios en cuestión.

Veamos pues, si éstos se deben considerar como servicios profesionales o no profesionales.

E.

Al tratar el tema de lo que se considera un servicio profesional o no profesional, -- y ya más en los relacionado a las controversias que nos ocupan --, debemos recordar aquí que la Ley para Regular las Profesiones de Detectives Privados y Guardias de Seguridad en Puerto Rico, Ley Núm. 108 de 29 de junio de 1965, 25 LPRA secs. 285 *et seq.* (en adelante, "Ley para Regular la Profesión de Detective Privado") es el estatuto que regula el campo de la profesión de guardias de seguridad en la isla. Al analizar el porqué de la aprobación de la mencionada pieza legislativa, hemos sentenciado que ésta "obedece al interés del Estado de regular toda actividad de carácter policial desempeñada por entes privados, para garantizar así que sólo las personas cualificadas puedan realizar esta labor". *Ranger Am. v. Loomis Fargo*, 171 DPR 670, 677 (2007) (*Per Curiam*). Véase, *Wackenhunt Corp. v. Rodríguez Aponte*, 100 DPR 518, 524 (1972).

En específico, el Artículo 4 de la Ley para Regular la Profesión de Detective Privado, *infra*, establece los requisitos para obtener la licencia como guardia de seguridad privado. Entre estos requisitos se encuentran:

> (e) Haber aprobado un curso de adiestramiento de por lo menos cuatro (4) semanas ofrecido por la Academia de la Policía y cualquier agencia que vaya a utilizar sus servicios.

(f) Los guardias de seguridad deberán cumplir con seis (6) horas en adiestramientos de educación continua cada dos (2) años, al momento de renovar su licencia. Cuatro (4) de las horas antes requeridas de educación continua, deberán ser recibidas compulsoriamente en la Academia de la Policía o su entidad sucesora en cursos diseñados y ofrecidos por la mencionada agencia.

(g) Los adiestramientos tendrán, sin limitarse, el siguiente contenido:

(i) Las disposiciones de esta Ley.

(ii) Las Reglas 11 y 12 de Procedimiento Criminal.

(iii) Código Penal vigente.

(iv) Ley 404-2000, conocida como "Ley de Armas de Puerto Rico".

(v) Ley Núm. 54 de 15 de agosto de 1989, conocida como "Ley para la Prevención e Intervención con la Violencia Doméstica".

(vi) Derechos civiles.

(vii) Jurisprudencia sobre los temas anteriores. 25 LPRA sec. 285c.

**Ahora bien, lo anterior, por sí solo, si bien establece una serie de requerimientos para aquel o aquella que quiera desempeñarse como guardia de seguridad privado, no convierte en servicios profesionales este tipo de tarea. Conviene, entonces, pasar juicio sobre aquellos requisitos adicionales que, de conformidad con los estatutos estatales y federales aplicables, la AEE requirió como parte del RFP o requerimiento de propuestas objeto del presente litigio, a saber:**

**Poseer la Transportation Worker Identification Card (TWIC) vigente previo al comienzo de los servicios.**

Aprobar, previo al comienzo de los servicios, la evaluación que realiza el Oficial de Instalación designado.

**Conocimiento básico de español e inglés, tanto oral como escrito.** La Autoridad se reserva el derecho de hacer pruebas de comunicación oral a los guardias de seguridad para comprobar el conocimiento de los dos idiomas.

**Demostrar eficiencia en la redacción de Informes tanto en español como en inglés.** La Autoridad se reserva el derecho de administrar pruebas escritas para verificar el cumplimiento de este requisito.

**La compañía de seguridad proveerá los adiestramientos necesarios y el FSO (Facility Security Officer) aprobará los mismos bajo el Código 105.210 (Facility Personnel with Security Duties). [33 CFR 105.210].[5]**

Presentar evidencia de haber tomado los siguientes adiestramientos:

---

[5] **En particular, el *Code of Federal Regulations*, en su Título 33 sobre *Navigation and Navigable Waters*, en la Sección 105.210 sobre *Facility personnel with security duties*, establece lo siguiente:**

**Facility personnel responsible for security duties must maintain a TWIC, and must have knowledge, through training or equivalent job experience, in the following, as appropriate:**

**(a) Knowledge of current security threats and patterns;**
**(b) Recognition and detection of dangerous substances and devices;**
**(c) Recognition of characteristics and behavioral patterns of persons who are likely to threaten security;**
**(d) Techniques used to circumvent security measures;**
**(e) Crowd management and control techniques;**
**(f) Security related communications;**
**(g) Knowledge of emergency procedures and contingency plans;**
**(h) Operation of security equipment and systems;**
**(i) Testing, calibration, and maintenance of security equipment and systems;**
**(j) Inspection, control, and monitoring techniques;**
**(k) Relevant provisions of the Facility Security Plan (FSP);**
**(l) Methods of physical screening of persons, personal effects, baggage, cargo, and vessel stores; and**
**(m) The meaning and the consequential requirements of the different MARSEC Levels.**
**(n) Familiar with all relevant aspects of the TWIC program and how to carry them out. (Énfasis nuestro). 105 CFR sec. 105.210.**

1. Uso y Manejo de Armas de Fuego - tendrá que presentar certificado anual de una armería o instructor de tiro certificado y además estar adscrito a un polígono.

2. **Amenaza o Hallazgos de Artefactos Explosivos - Reconocer y detectar sustancias y dispositivos peligrosos y reconocer comportamiento de personas que puedan representar amenaza a la seguridad.** Deberá presentar certificado de la Policía de Puerto Rico.

3. Registro de Vehículos y Personas - deberá presentar certificado de la Policía de Puerto Rico.

4. **Manejo y Técnicas de control de grupos.**

5. Uso de Radio de Comunicación.

6. Procedimiento de Manejo de Emergencias y Planes de Emergencia. (Énfasis nuestro). Véase, *Requisitos y criterios de evaluación de los guardias de seguridad asignados a instalaciones de la Autoridad de Energía Eléctrica*, Apéndice del *Alegato de la parte peticionaria*, págs. 114-118.

Como se puede apreciar, son considerables los requisitos especializados que fueron exigidos por la AEE, -- además de aquellos establecidos por el estatuto que regula la profesión en cuestión --, para poder brindar los servicios de vigilancia y seguridad requeridos en el RFP o requerimiento de propuesta objeto de estudio. Lo anterior, como ya mencionamos, es de conformidad con lo dispuesto en la legislación y reglamentación estatal y federal aplicable.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de la controversia ante nos.

III.

En el presente caso, como mencionamos anteriormente, la AEE señala que el Tribunal de Apelaciones erró al resolver que la presentación de determinado recurso de revisión judicial asociado con la causa de epígrafe fue una prematura, pues la notificación de adjudicación de la subasta en la que se basa la misma adolecía de defectos por la falta de mención a las disposiciones sobre revisión administrativa y revisión judicial de la Ley de Compras de ASG, *supra*, por lo que los términos aplicables no habían comenzado a transcurrir. Tiene razón la AEE.

**Y es que, tras una detenida y cuidadosa lectura del expediente ante nos, queda patentemente claro que el RFP realizado por la AEE tenía como propósito el adquirir servicios de vigilancia y seguridad sumamente especializados, con requisitos distintos a los que se pudiese esperar de un guardia de seguridad ordinariamente.** A modo de ejemplo, entre esos requisitos se encuentran: el poseer el *Transportation Worker Identification Card* (TWIC), -- con los requerimientos federales que eso implica --; dominio de los idiomas español e inglés, tanto oral como escrito; diversos adiestramientos especializados en la vigilancia de facilidades como las aquí en cuestión; entre otras.

Siendo ello así, los servicios de vigilancia y protección a adquirirse por la AEE son <u>servicios profesionales</u> y, por lo tanto, de conformidad con la normativa antes expuesta, no le son de aplicación las

disposiciones establecidas en la Ley de Compras de ASG. Por el contrario, son de aplicación los lineamientos que se establecen en la LPAU, particularmente aquellos relacionados a los procesos de subastas o requerimientos de propuestas, y sus respectivas revisiones administrativas y judiciales. Así, correctamente se recogió por la AEE en la notificación de la adjudicación de la subasta aquí en controversia, por lo que, -- en lo que respecta al presente litigio --, St. James Security acudió tardíamente ante el Tribunal de Apelaciones a solicitar la revisión judicial de la determinación tomada por la referida agencia administrativa.

Recordemos que en el presente caso: (1) el 15 de diciembre de 2021 la AEE adjudicó el RFP aquí en controversia en el cual St. James Security no fue favorecida; (2) el 23 de diciembre de 2021, es decir, dentro del término de veinte (20) días, según dispuesto en la Sección 3.19 de la LPAU, *supra,* St. James Security presentó su recurso de revisión ante la Secretaría de Procedimientos Adjudicativos de la AEE; (3) transcurrido el término de treinta (30) días que tenía la AEE para considerar el recurso de revisión administrativa presentado por St. James Security, -- sin que ésta emitiera determinación alguna --, el 24 de enero de 2022 comenzó a transcurrir el término de veinte (20) días que tenía la referida empresa para acudir en revisión judicial al Tribunal de Apelaciones;[6] (4) el término antes señalado venció el 14

---

[6] Esto, según se establecía en ese momento en la Sección 3.19 de la LPAU, *supra*, y la Sección 4.2 del referido estatuto, *supra*.

de febrero de 2022, y (5) no fue hasta el 23 de febrero de 2022 -- diez (10) días luego de que venciera el término -- que St. James Security presentó su recurso ante el Tribunal de Apelaciones. No queda duda alguna, pues, de que, en lo relacionado a la causa de epígrafe, lo que correspondía era desestimar el recurso de revisión judicial presentado por St. James Security ante el foro apelativo intermedio por falta de jurisdicción.

IV.

Por los fundamentos antes expuestos, se modifica la *Sentencia* emitida por el Tribunal de Apelaciones, la cual desestimó el recurso de revisión judicial por entender que éste era prematuro, al no haber comenzado el término correspondiente por una notificación inadecuada.

En consecuencia, se desestima la *Petición de certiorari* por falta de jurisdicción, al ser presentado el recurso ante el Tribunal de Apelaciones fuera de los términos provistos en la LPAU, *supra*. Por lo tanto, se sostiene la adjudicación realizada el 15 de diciembre de 2021 por la AEE.

Se dictará *Sentencia* de conformidad.


                                        Ángel Colón Pérez
                                        Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

St. James Security Services,
LLC

    Recurrida                     CC-2022-0796        *Certiorari*

       v.

Autoridad de Energía Eléctrica;
O´Neil Security Systems

    Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 22 de diciembre de 2023.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte de la presente Sentencia, se modifica la *Sentencia* emitida por el Tribunal de Apelaciones, la cual desestimó el recurso de revisión judicial por entender que éste era prematuro, al no haber comenzado el término correspondiente por una notificación inadecuada.

En consecuencia, se desestima la *Petición de certiorari* por falta de jurisdicción, al ser presentado el recurso ante el Tribunal de Apelaciones fuera de los términos provistos en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017 (3 LPRA sec. 9601 *et seq*.). Por lo tanto, se sostiene la adjudicación realizada el 15 de diciembre de 2021 por la Autoridad de Energía Eléctrica de Puerto Rico.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió Opinión Disidente a la cual se une el Juez Asociado señor Rivera García. La Jueza Presidenta Oronoz Rodríguez no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| St. James Security Services, LLC<br><br>    Recurrida<br><br>       v.<br><br>Autoridad de Energía Eléctrica; O'Neil Security Systems<br><br>    Peticionarias | CC-2022-0796 | |

Opinión disidente emitida por la Jueza Asociada señora Pabón Charneco a la cual se une el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico, a 22 de diciembre de 2023.

La Opinión que hoy se emite falla en disponer adecuadamente de la controversia ante nuestra consideración. La mera posesión de una tarjeta de identificación (cuya expedición tan solo requiere aprobar un *background check*), saber hablar y escribir español e inglés y completar ciertos adiestramientos relacionados a las funciones ejercidas ordinariamente por un guardia de seguridad, no son cualificaciones suficientes para convertir los servicios solicitados por la Autoridad de Energía Eléctrica (AEE o peticionaria) en "servicios profesionales" para efectos de la Ley Núm. 73-2019, según enmendada, conocida como *Ley de la Administración de Servicios Generales para la*

*Centralización de las Compras del Gobierno de Puerto Rico de 2019*, 3 LPRA sec. 9831.

Por lo cual, en este caso resulta forzoso concluir que la Ley Núm. 73-2019, *supra*, es de aplicación al proceso de adquisición celebrado por la AEE. En consecuencia, debimos establecer que la corporación pública tenía el deber de advertir a los licitadores de los remedios de revisión que tenían disponibles al amparo de este estatuto, y no tan solo aquellos dispuestos en la Ley Núm. 38-2017, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9601 *et seq.*[1]

No obstante, habiéndose arribado a una conclusión diametralmente distinta en la Opinión emitida, procedo a disentir.

**I**

El 9 de noviembre de 2021, la AEE publicó el *Request for Proposal Núm. 00003252* (RFP), con el fin de recibir propuestas de servicios de vigilancia y seguridad para las Centrales de Palo Seco, Cambalache y San Juan, ubicadas en la Región Norte de Puerto Rico. Luego de varios trámites, el 1 de diciembre de 2021, la corporación pública llevó a cabo el acto de apertura, al cual comparecieron St. James Security Services, Inc. (St. James Security o recurrida), Bridge

---

[1] Resulta evidente que los licitadores tenían derecho a un proceso de revisión administrativa ante la AEE al amparo de la Sección 3.9 de la Ley Núm. 38-2017, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9659, vigente al momento de los hechos. Sin embargo, nos corresponde determinar si, **en la alternativa**, podían recurrir en revisión ante la Junta Revisora de Subastas de la Administración de Servicios Generales.

Security Services, Inc. (Bridge Security), entre otras entidades.

El 8 de diciembre de 2021, el Comité Técnico Evaluador de la AEE emitió un *Informe [de] Evaluación Técnica [de los] Servicios de Vigilancia y Protección [para la] Región Norte – Subasta 00003252* recomendado adjudicar el RFP a St. James Security. No obstante, el 15 de diciembre de 2021 el Comité de Subastas de la AEE adjudicó la buena pro a la compañía Bridge Security, por ser la postora más baja entre los competidores.

En la notificación cursada a los licitadores, el Comité de Subastas de la AEE informó que estos podían solicitar revisión del dictamen conforme a los procesos dispuestos por la Ley Núm. 38-2017, *supra*, y el *Reglamento de Subastas de la Autoridad de Energía Eléctrica*, Reglamento Núm. 8518 de 10 de septiembre de 2014. En particular, expresó que:

> **Cualquier parte adversamente afectada por la presente decisión final podrá presentar una Moción de Reconsideración luego de cumplir *con* las disposiciones del Capítulo IV, Artículo C del Reglamento de Subastas de la Autoridad de Energía Eléctrica y las disposiciones aplicables de la Ley 38-2017 (conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico), incluyendo, pero no limitado a la Sección 3.19 de la Ley 38-2017. La moción de reconsideración debe ser presentada dentro del término de veinte (20) días calendario contados a partir del depósito en el correo federal o correo electrónico de la notificación de adjudicación de la subasta.** La moción de reconsideración debe presentarse en la Secretaría de Procedimientos Adjudicativos, 8vo piso, Edificio NEOS, parada 16 1/2, Santurce, Puerto Rico o enviarse al PO Box 363928, San Juan, PR 00936-3928. Las razones de la reconsideración deberán estar claramente establecidas y también deberán contener una certificación de haberse enviado copia de la

moción de reconsideración a los demás licitadores comparecientes en la subasta.

**La Autoridad de Energía Eléctrica considerará la Moción de Reconsideración dentro de los treinta (30) días de haberse presentado y podrá extender dicho término una sola vez, por un término adicional de quince (15) días calendario. Si se tomare alguna determinación en su moción de reconsideración, el término para solicitar revisión judicial empezará a contarse desde la fecha en que se depositó en el correo federal copia de la notificación de la decisión de la Autoridad de Energía Eléctrica resolviendo la moción de reconsideración. Si la Autoridad de Energía Eléctrica no toma alguna acción en relación con la Moción de Reconsideración dentro del término correspondiente según mencionado en la Ley 38-2017, se entenderá que ésta ha sido rechazada de plano y a partir de esa fecha comenzará a correr el tiempo para la revisión judicial.**

**La parte adversamente afectada con relación a su reconsideración por una orden o resolución final de la Autoridad, podrá presentar una solicitud de revisión judicial a tenor con la sección 4.2 de la Ley 38-2017 ante el Tribunal de Apelaciones** dentro del término de veinte (20) días, contados a partir del archivo en autos de la copia de la notificación de la determinación final de la Autoridad o **dentro del término aplicable de veinte (20) días calendario de haber transcurrido el plazo dispuesto en la Sección 3.19 de la Ley 38-2017.** La mera presentación de una solicitud de revisión al amparo de la Sección 4.2 de la Ley 38-2017 no tendrá el efecto de paralizar la adjudicación de la subasta impugnada. (Énfasis suplido).[2]

Inconforme, el 23 de diciembre de 2021, St. James Security presentó una *Solicitud de Reconsideración* ante la Secretaría de Procedimientos Adjudicativos de la AEE. Además, el 4 de enero de 2022, la recurrida presentó una Solicitud de Revisión ante la Junta Revisora de Subastas de la Administración de Servicios Generales reclamando que la

---

[2] Apéndice del *Certiorari*, pág. 177-178.

notificación de adjudicación cursada por el Comité de Subastas de la AEE era defectuosa por no advertirle de los remedios de revisión que tenía disponible al amparo de la Ley Núm. 73-2019, *supra*.

Posteriormente, el 23 de febrero de 2022, St. James Security presentó un *Recurso de Revisión de Decisión Administrativa* ante el Tribunal de Apelaciones. En su escrito, reiteró los argumentos planteados ante la Junta Revisora de la Administración de Servicios Generales. Por su parte, la AEE compareció ante el foro apelativo intermedio mediante una *Solicitud de Desestimación*, alegando que St. James Security había presentado su recurso fuera del término dispuesto en la Ley Núm. 38-2017, *supra*.

Así las cosas, y luego de evaluar los alegatos instados por las partes, el 21 de julio de 2022 el Tribunal de Apelaciones notificó una *Sentencia* mediante la cual desestimó el recurso instado por St. James Security por entender que el mismo era prematuro. En su dictamen, el foro apelativo intermedio razonó que:

> [L]a notificación de la adjudicación de la subasta, adolece de defectos en su contenido, que requieren corrección y enmiendas ulteriores por parte de AEE. **En particular hay que incluir en la notificación de la adjudicación de la Subasta, las disposiciones requeridas por la Ley Núm. 73-2019, según enmendada, supra, lo que no se hizo en la notificación de la adjudicación ante nuestra consideración. Ello, con el objetivo de garantizar el debido proceso de ley y una adecuada notificación a las partes.**
>
> En fin, toda vez que, en efecto, la aludida Notificación adolece de las deficiencias de notificación antes señaladas, es forzoso concluir que los términos para acudir ante este foro

revisor a solicitar su revisión no han comenzado a transcurrir. Por consiguiente, el recurso de revisión judicial de epígrafe resultó prematuro.[3] (Énfasis suplido).

Luego de solicitar infructuosamente al Tribunal de Apelaciones que reconsiderara su dictamen, la peticionaria acude ante nos mediante recurso de *Certiorari* y expone los señalamientos de error siguientes:

1. ERRÓ EL TRIBUNAL DE APELACIONES AL DETERMINAR QUE A LA AUTORIDAD LE APLICA LA LEY NÚM. 73 - 2019, A PESAR DE SER UNA ENTIDAD EXENTA.

2. ERRÓ EL TRIBUNAL DE APELACIONES AL CONCLUIR QUE LA NOTIFICACIÓN DE ADJUDICACIÓN DE LA SUBASTA TIENE DEFICIENCIAS EN SU CONTENIDO PORQUE HAY QUE INCLUIR LAS DISPOSICIONES REQUERIDAS EN LA LEY NÚM. 73 - 2019, A PESAR DE LA AUTORIDAD SER UNA ENTIDAD EXENTA.

3. ERRÓ EL TRIBUNAL DE APELACIONES AL NO CONSIDERAR EL PLANTEAMIENTO DE FALTA DE JURISDICCIÓN POR HABERSE PRESENTADO EL RECURSO DE REVISIÓN JUDICIAL FUERA DEL TÉRMINO DISPUESTO EN LEY.

Por su parte, el 26 de mayo de 2023, St. James Security presentó un Alegato en oposición al recurso de autos. En este, sostuvo que la notificación cursada por el Comité de Subastas de la AEE era defectuosa, al no incluir las advertencias de los procesos de revisión disponibles ante la Junta Revisora de Subastas de la Administración de Servicios Generales. Considero que le asiste la razón. Veamos.

**II**

**A.**

El Art. II, Sec. 7, de la Constitución de Puerto Rico dispone que: "ninguna persona será privada de su libertad o

---

[3] Apéndice del *Certiorari*, pág. 248.

propiedad sin [un] debido proceso de ley […]". Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. Las Enmiendas Quinta y Decimocuarta de la Constitución Federal consagran el mismo derecho. Enmda. V & XIV, Const. EE.UU., LPRA, Tomo I. Debido a ello, y en vista que las agencias administrativas ejercen funciones adjudicativas que interfieren con los intereses de libertad y propiedad de los individuos, las garantías del debido proceso de ley son aplicables a sus procesos. *PVH Motor v. ASG*, 209 DPR 122, 130-131 (2022); *Báez Díaz v. ELA*, 179 DPR 605, 623 (2010).

En su concepción abarcadora y procesal, el debido proceso de ley requiere que las personas tengan derecho a un proceso justo y con todas las garantías de ley aplicables. *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012), citando a Marrero *Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995). En ese sentido, exige que, como mínimo, en todo proceso adjudicativo se observen las salvaguardas siguientes: (1) **notificación adecuada del proceso**; (2) un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente. *PVH Motor v. ASG*, *supra*, pág. 131; *Vázquez González v. Mun. San Juan*, 178 DPR 636, 643 (2010). De igual forma, la Ley Núm. 38-2017, *supra*, asegura garantías procesales similares.[4]

---

[4] En particular, la Sección 3.1 de la Ley Núm. 38-2017, *supra*, establece que en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los derechos siguientes: (A) derecho a notificación

Con respecto al requisito de notificación, hemos dispuesto que este no constituye una mera formalidad. Ello pues, una notificación inadecuada puede provocar consecuencias adversas a la sana administración de la justicia. *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 736-737 (2010); *Olivo v. Srio. de Hacienda*, 164 DPR 165, 178 (2005). A *contrario sensu*, una notificación efectiva brinda a las partes la oportunidad de advenir en conocimiento real de la decisión tomada en su contra y les concede la oportunidad de determinar si ejercen o no los remedios disponibles en ley. *Picorelli López v. Depto. de Hacienda*, *supra*, pág. 737.

Al igual que en las determinaciones judiciales y administrativas, la correcta y oportuna notificación de la adjudicación de una subasta es un requisito *sine qua non* de un sistema cuasi-judicial ordenado y su omisión puede conllevar consecuencias graves. *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 538 (2019); *IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30, 37 (2000). Debido a esto, una notificación defectuosa priva de jurisdicción al foro revisor para entender sobre el asunto impugnado y el recurso que se presente a tales efectos es **prematuro**. *PR Eco Park et al. v. Mun. de Yauco*, *supra*, pág. 538.

---

oportuna de los cargos o querellas o reclamos en contra de una parte; (B) derecho a presentar evidencia; (C) derecho a una adjudicación imparcial y (D) derecho a que la decisión sea basada en el expediente. 3 LPRA sec. 9641.

**B.**

La Ley Núm. 73-2019, *supra*, fue aprobada con el fin de centralizar los procesos de compras gubernamentales de bienes, obras y servicios, en aras de lograr mayores ahorros fiscales y transparencia en la gestión gubernamental. Exposición de Motivos de la Ley Núm. 73-2019, *supra*; *PVH Motor v. ASG*, *supra*, pág. 132. Cónsono con ello, se delegó a la Administración de Servicios Generales la responsabilidad de implementar dicha política pública y de coordinar y dirigir el proceso de adquisición de bienes y servicios y la contratación de servicios del Gobierno de Puerto Rico. *Íd.*

Las disposiciones de la Ley Núm. 73-2019, *supra*, aplican a los procesos de compras y subastas de bienes, obras y servicios **no profesionales** en las Entidades Gubernamentales **y Entidades Exentas**. Art. 3 de la Ley Núm. 73-2019, *supra*, 3 LPRA sec. 9831b. Para efectos de este estatuto, una Entidad Exenta es una "Entidad Gubernamental que no viene obligada a realizar sus compras a través de la [ASG] […]". Art. 4 de la Ley Núm. 73-2019, *supra*, 3 LPRA sec. 9831c. **No obstante, las Entidades Exentas tienen que adoptar los métodos de licitación y compras excepcionales y seguir los procedimientos establecidos por la Ley Núm. 73-2019, *supra*, al momento de realizar sus compras y subastas de bienes, obras y servicios no profesionales.** *Íd.* La AEE es una de las entidades que la Ley Núm. 73-2019, supra, expresamente incluye dentro de esta clasificación. *Íd.*

Por su parte, el Art. 4 de la Ley Núm. 73-2019, *supra*, define los conceptos de "servicio profesional" y "servicio no profesional". El mismo dispone al respecto que:

> hh) Servicios no profesionales: Aquellos servicios que no son ofrecidos por una persona natural o jurídica con conocimientos o habilidades especializadas a quien se le requiere poseer un título universitario o licencia que lo acredite como profesional especializado.
> **ii) Servicios profesionales: Aquellos servicios que son ofrecidos por una persona natural o jurídica con conocimientos o habilidades especializadas a quien se le requiere poseer un título universitario o licencia que lo acredite como profesional especializado; o cuya prestación principal consiste en el producto de la labor intelectual, creativa o artística, o en el manejo de destrezas altamente técnicas o especializadas.**
> 3 LPRA sec. 9831c. (Énfasis suplido).

Además, en *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1022 (2020), al interpretar el concepto de "servicio profesional" en el contexto de una cláusula de exclusión contenida en una póliza de seguros, añadimos que:

> en ausencia de una definición del término "servicios profesionales" como parte de una cláusula de exclusión, utilizaremos su acepción legal. En este contexto, puntualizamos que **"un servicio profesional conlleva una vocación, llamado, ocupación o empleo que supone, además, algún tipo de conocimiento, labor o destreza especializada". La conducta profesional se destaca porque demanda el uso de habilidades "predominantemente intelectuales o mentales, no físicas o manuales". Asimismo, requiere "el uso de discernimiento, según criterios inculcados mediante estudios o a base de algún conocimiento especializado".** Consiguientemente, **"quedan excluidas las actividades que envuelven simplemente tareas físicas, manuales o clericales".** "Por último, es importante señalar que la exclusión de servicios profesionales no se limita a profesiones tradicionales tales como abogados, médicos, arquitectos e ingenieros".
> (Citas omitidas) (Énfasis suplido).

## C.

El Capítulo VIII de la Ley Núm. 73-2019, *supra*, rige todo lo concerniente a los procesos de revisión ante la Junta Revisora de Subastas. En lo pertinente al caso de autos, el Art. 64 establece que:

> **La parte adversamente afectada por una decisión** de la Administración, de la Junta de Subastas y/o **de cualquier Junta de Subastas de Entidad Exenta podrá, dentro del término de veinte (20) días a partir del depósito en el correo federal o correo electrónico notificando la adjudicación de la subasta, presentar una solicitud de revisión ante la Junta Revisora de la Administración de Servicios Generales.** Presentada la revisión administrativa, la Administración y/o la Junta de Subastas correspondiente elevará a la Junta Revisora copia certificada del expediente del caso, dentro de los tres (3) días naturales siguientes a la radicación del recurso. 3 LPRA sec. 9838a (Énfasis y subrayado suplido).

Además, el Art. 66 de la Ley Núm. 73-2019, *supra*, añade que:

> La Junta Revisora deberá considerar la revisión administrativa, dentro de los treinta (30) días de haberse presentado. La Junta Revisora podrá extender dicho término una sola vez, por un término adicional de quince (15) días calendario.
>
> […]
>
> Si se tomare alguna determinación en su consideración, el término para instar el recurso de revisión judicial empezará a contarse desde la fecha en que se depositó en el correo federal o correo electrónico copia de la notificación de la decisión de la Junta Revisora resolviendo la moción.
>
> Si la Administración o la Junta Revisora dejare de tomar alguna acción con relación a la solicitud de revisión dentro del término correspondiente, según dispuesto en esta Ley, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial. 3 LPRA sec. 9838c.

Cabe destacar que, en cualquier escenario dispuesto en el inciso anterior, el Tribunal de Apelaciones es el foro con jurisdicción para revisar estas determinaciones administrativas por medio del proceso de revisión judicial contemplado en la Ley Núm. 38-2017, *supra*. Art. 68 de la Ley Núm. 73-2019, *supra*, 3 LPRA sec. 9838e.[5]

**III**

En su escrito ante nos, la AEE alega que el Tribunal de Apelaciones erró al concluir que el recurso de revisión judicial presentado por St. James Security era prematuro por no incluir en la notificación de adjudicación del RFP los términos de revisión administrativa y judicial que dispone la Ley Núm. 73-2019, *supra*. A su entender, tal advertencia era innecesaria debido a que los servicios de vigilancia y seguridad subastados están, presuntamente, excluidos de las disposiciones de esta ley, por tratarse de "servicios profesionales". Así pues, considera que el Tribunal de Apelaciones carecía de jurisdicción para atender el recurso de revisión judicial instado por St. James, por haberse incumplido los términos que dispone la Ley Núm. 38-2017, *supra*, para presentar el mismo.

Por su parte, la Opinión emitida por este Tribunal coincide con dicha postura. Añade que, si bien los servicios provistos por un guardia de seguridad licenciado no son, de

---

[5] El *Reglamento Uniforme de Compras y Subastas de Bienes, Obras y Servicios No Profesionales de la ASG*, Reglamento Núm. 9230 de 18 de noviembre de 2019 recoge estos procesos de revisión administrativa y judicial.

ordinario, "servicios profesionales" para efectos de la Ley Núm. 73-2019, *supra*,[6] las cualificaciones añadidas por la AEE al RFP sí tienen el efecto de incluirlos bajo esta categoría. Discrepo de dicha apreciación.

Un examen del RFP publicado por la AEE refleja que la entidad buscaba contratar servicios de seguridad y vigilancia para ciertas Centrales de Generación reguladas por las disposiciones federales contenidas en el Título 33 del *Code of Federal Regulations*. Debido a ello, el personal de seguridad a contratarse tenía que satisfacer una variedad de requisitos, incluyendo:

---

[6] Con respecto a los requisitos para obtener una licencia de guardia de seguridad privado, el Artículo 4 de la Ley Núm. 108 de 29 de junio de 1965, según enmendada, conocida como Ley para Regular las Profesiones de Detectives Privados y Guardias de Seguridad en Puerto Rico, 25 LPRA sec. 285c, dispone, en lo pertinente, que se deberá cumplir con lo siguiente:

> (e) Haber aprobado un curso de adiestramiento de por lo menos cuatro (4) semanas ofrecido por la Academia de la Policía y cualquier agencia que vaya a utilizar sus servicios.
>
> (f) Los guardias de seguridad deberán cumplir con seis (6) horas en adiestramientos de educación continua cada dos (2) años, al momento de renovar su licencia. Cuatro (4) de las horas antes requeridas de educación continua, deberán ser recibidas compulsoriamente en la Academia de la Policía o su entidad sucesora en cursos diseñados y ofrecidos por la mencionada agencia.
>
> (g) Los adiestramientos tendrán, sin limitarse, el siguiente contenido:
>
> > (i) Las disposiciones de esta Ley.
> > (ii) Las Reglas 11 y 12 de Procedimiento Criminal.
> > (iii) Código Penal vigente.
> > (iv) Ley 404-2000, conocida como "Ley de Armas de Puerto Rico".
> > (v) Ley Núm. 54 de 15 de agosto de 1989, conocida como "Ley para la Prevención e Intervención con la Violencia Doméstica".
> > (vi) Derechos civiles.
> > (vii) Jurisprudencia sobre los temas anteriores.

Poseer la Transportation Worker Identification Card (TWIC) vigente previo al comienzo de los servicios.[7]

Aprobar, previo al comienzo de los servicios, la evaluación que realiza el Oficial de Instalación designado.

Conocimiento básico de español e inglés, tanto oral como escrito. La Autoridad se reserva el derecho de hacer pruebas de comunicación oral a los guardias de seguridad pare comprobar el conocimiento de los dos idiomas.

Demostrar eficiencia en la redacción de Informes tanto en español como en inglés. La Autoridad se reserva el derecho de administrar pruebas escritas para verificar el cumplimiento de este requisito.

La compañía de seguridad proveerá los adiestramientos necesarios y el FSO (Facility Security Officer) aprobará lo mismos bajo el Código 105.210 (Facility Personnel with Secuirity Duties). [33 CFR 105.210].[8]

---

[7] La Credencial de Identificación de Trabajador de Transporte (TWIC, por sus siglas en inglés) es requerida por la Ley de Seguridad del Transporte Marítimo para trabajadores que necesiten accesar áreas seguras en instalaciones/buques marítimos, entre otros. Para expedirla, la Administración de Seguridad en el Transporte (TSA, por sus siglas en inglés) lleva a cabo una evaluación de amenaza de seguridad (*background check*).                                                          Véase: https://tsaenrollmentbyidemia.tsa.dhs.gov/programs/twic?lang=es (última visita, 29 de noviembre de 2023).

[8] El Título 33 del *Code of Federal Regulations*, que trata sobre "Navigation and Navigable Waters", dispone en su Sección 105.210 lo siguiente:

Facility personnel responsible for security duties must maintain a TWIC, and must have knowledge, through training or equivalent job experience, in the following, as appropriate:

(a) Knowledge of current security threats and patterns;
(b) Recognition and detection of dangerous substances and devices;
(c) Recognition of characteristics and behavioral patterns of persons who are likely to threaten security;
(d) Techniques used to circumvent security measures;
(e) Crowd management and control techniques;
(f) Security related communications;
(g) Knowledge of emergency procedures and contingency plans;
(h) Operation of security equipment and systems;
(i) Testing, calibration, and maintenance of security equipment and systems;
(j) Inspection, control, and monitoring techniques;
(k) Relevant provisions of the Facility Security Plan (FSP);
(l) Methods of physical screening of persons, personal effects, baggage, cargo, and vessel stores; and

Presentar evidencia de haber tomado los siguientes adiestramientos:

1. Uso y Manejo de Armas de Fuego - tendrá que presentar certificado anual de una armería o instructor de tiro certificado y además estar adscrito a un polígono.

2. Amenaza o Hallazgos de Artefactos Explosivos - Reconocer y detectar sustancias y dispositivos peligrosos y reconocer comportamiento de personas que puedan representar amenaza a la seguridad. Deberá presentar certificado de la Policía de Puerto Rico.

3. Registro de Vehículos y Personas - deberá presentar certificado de la Policía de Puerto Rico.

4. Manejo y Técnicas de control de grupos.

5. Uso de Radio de Comunicación.

6. Procedimiento de Manejo de Emergencias y Planes de Emergencia. (Énfasis suplido).[9]

Contrario a lo dispuesto en la Opinión emitida por este Tribunal, un análisis de estos requerimientos refleja que los mismos no tienen el efecto de convertir los servicios solicitados en unos altamente técnicos o especializados. Ello pues, no estamos ante servicios ofrecidos por personas con conocimientos o habilidades especializadas a quienes se les requiera poseer un título universitario o licencia que los acredite como tal o cuya prestación principal consista en el producto de una labor intelectual, creativa o artística, o por medio de destrezas altamente técnicas o

---

(m) The meaning and the consequential requirements of the different MARSEC Levels.
(n) Familiar with all relevant aspects of the TWIC program and how to carry them out. 33 C.F.R. sec. 105.210.

[9] Apéndice del *Alegato de la parte peticionaria*, págs. 114-118.

especializadas. Art. 4 de la Ley Núm. 73-2019, *supra*, 3 LPRA sec. 9831c.

Por el contrario, las tareas en cuestión son unas inherentemente físicas o manuales. Así se desprende del *Manual para el guardia de seguridad y vigilancia de dependencias* anejado al RFP, el cual contempla entre las labores para estos servidores las siguientes: (1) requerir a los empleados que presenten sus tarjetas de identificación para poder entrar a los predios; (2) mantener un registro de empleados y visitantes; (3) orientar al personal y visitantes sobre las áreas de estacionamiento; (4) comunicar cualquier situación sospechosa que atente contra la vida o el interés de la AEE; (5) coordinar toda visita con la persona interesada y anotar en el registro la autorización, entre otras tareas afines.[10]

En vista de lo anterior, resulta forzoso concluir que los servicios de seguridad y vigilancia procurados por la AEE son "servicios **no profesionales**" para efectos de la Ley Núm. 73-2019, *supra*, y que, por tanto, la entidad tenía la obligación de cumplir con las disposiciones de esta legislación al procurar los mismos. En particular, la AEE debió advertir a los licitadores de los procesos de revisión administrativa y judicial que tenían a su haber al amparo del citado estatuto, y no tan solo los dispuestos en la Ley Núm. 38-2017, *supra*. Al no haberlo hecho, la notificación de

---

[10] Apéndice del *Certiorari*, págs. 141-143.

adjudicación cursada por la agencia fue una evidentemente defectuosa. En consecuencia, el recurso de revisión instado por St. James Security ante el Tribunal de Apelaciones fue prematuro.

La postura que hoy asume este Tribunal pudiese tener el efecto indeseable de que otras Entidades Exentas añadan requisitos inmeritorios a sus Requerimientos de Propuestas, con el fin de intentar convertir los servicios solicitados en "servicios profesionales" para efectos de la Ley Núm. 73-2019, *supra*, y así evadir el cumplimiento de las disposiciones de esta importante legislación. Debemos recordar que la Ley Núm. 73-2019, *supra*, fue creada con el propósito de asegurar que los fondos del Gobierno de Puerto Rico se utilicen de manera justa, imparcial, abierta y transparente. Exposición de Motivos de la Ley Núm. 73-2019, *supra*. Por lo cual, debemos ser sumamente cautelosos al momento de evaluar si una entidad está exenta o no de cumplir con sus disposiciones al momento de adquirir bienes y servicios con fondos públicos. En este caso, considero que fallamos en llevar a cabo dicha tarea.

## IV

Por los fundamentos antes expuestos, respetuosamente **disiento** de la Opinión emitida por esta Curia. En este caso, procedía que se confirmara la decisión del Tribunal de Apelaciones.

Mildred G. Pabón Charneco
Jueza Asociada