Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| PERFECT INTEGRATED SOLUTIONS, INC.<br><br>**APELANTE**<br><br>v.<br><br>MUNICIPIO DE SAN JUAN<br><br>**APELADA** | KLAN202400321 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2020CV03080 (SALÓN 0903 CIVIL)<br><br>Sobre: COBRO DE DINERO - ORDINARIO |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de mayo de 2024.

La parte apelante, Perfect Integrated Solutions Inc. (en adelante, Integrated o parte apelante), acude ante nos de una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 12 de enero de 2024, y notificada el 16 del mismo mes y año. Mediante el referido dictamen, el foro primario desestimó sumariamente una acción civil en cobro de dinero presentada por la parte apelante.

Los hechos esenciales para comprender la determinación que hoy alcanzamos se incluyen a continuación.

**I**

El 8 de junio de 2020, enmendada el 16 del mismo mes y año, la parte apelante instó una acción civil en cobro de dinero en contra del Municipio de San Juan (en adelante, Municipio o parte apelada). En el pliego, indicó que el Municipio la había contratado para proveer servicios de limpieza y mantenimiento de áreas verdes. Alegó que realizó todos los servicios requeridos por la parte

apelada, no obstante, esta aún le adeuda una suma de dinero que, presuntamente, ascendía a quinientos cuarenta y cinco mil novecientos noventa dólares con sesenta y un centavos ($545,990.61). Aseveró que realizó múltiples gestiones de cobro para lograr que la parte apelada le pagara por los referidos servicios, entre estas, comunicaciones escritas, cartas, reuniones, conversaciones telefónicas, pero todas, alegadamente, resultaron infructuosas.

El 23 de febrero de 2021, la parte apelada presentó su contestación a la demanda. En la misma, sostuvo que las cuantías reclamadas por la parte apelante estaban prescritas, por lo que no adeudaba el dinero exigido. De otra parte, alegó que las facturas que le entregó la parte apelante no cumplían con los requisitos establecidos en el ordenamiento civil vigente para la contratación gubernamental. Además, sostuvo que las mencionadas facturas nunca fueron entregadas a la división municipal correspondiente. En virtud de lo anterior, le solicitó al foro primario que declarara sin lugar la acción de epígrafe.

Tras varias incidencias procesales, entre los años 2021 y 2022, el 14 de abril de 2023, la parte apelante incoó una *Moción de Sentencia Sumaria*. En el escrito, alegó que no había disputa en cuanto a que el Municipio se obligó mediante múltiples contratos a pagar por los servicios que le ofreciera Integrated, y que, a la fecha, aún adeudaba la suma reclamada en la *Demanda*. Para sustentar sus argumentos, la parte apelante anejó a su escrito una declaración jurada de Rubén Navarro Santiago (en adelante, señor Navarro Santiago), quien para entonces era el CFO de Integrated, con fecha del 13 de abril de 2023. Esencialmente, el señor Navarro Santiago manifestó en la aludida declaración jurada que la parte apelante suscribió una multiplicidad de contratos con el Municipio entre los años 2016 a 2023, los cuales fueron, presuntamente,

publicados en la Oficina del Contralor. Además, aseveró que la parte apelante realizó todos los servicios en cumplimiento con lo pactado con la parte apelada. Por otro lado, afirmó que quedaron una serie de facturas pendientes a pagar. Entre ellas, unas en las cuales se le facturó al Departamento de Obras Públicas, las cuales fueron entregadas a una persona llamada Sonia Sánchez, el 7 de diciembre de 2021; otras en las cuales se le facturó al Departamento de Arte y Cultura, entregadas a una tal Yahaira Huertas, el 11 de marzo de 2023, y una en la cual se le facturó a la Escuela Bilingüe, entregada a un tal Gerardo Rosario, el 21 de marzo de 2022.[1] Al amparo de lo expuesto, la parte apelante le solicitó al foro primario que declarara con lugar su solicitud de sentencia sumaria, y que condenara a la parte apelada a pagarle la suma de dinero reclamada.

El 8 de junio de 2023, la parte apelante presentó una moción para suplementar su solicitud de sentencia sumaria. En ella, alegadamente incluyó la totalidad de las facturas adeudadas. Las referidas facturas, detallaban servicios ofrecidos entre los años 2016 y 2017.[2]

El 6 de julio de 2023, el Municipio se opuso a la solicitud de sentencia sumaria presentada por la parte apelante, y, a su vez, le solicitó al tribunal de instancia que dictara sentencia sumaria a su favor. En el pliego, afirmó que varias de las facturas señaladas por la parte apelante fueron debidamente pagadas. Particularmente, detalló que una de ellas fue pagada a través de un cheque que caducó, dado que la parte apelante nunca lo reclamó. Por otro lado, sostuvo que la factura número 31856 se refería a servicios que fueron prestados en una fecha en la cual aún no existía un contrato vigente entre las partes, por lo que el Municipio no estaba

---

[1] Apéndice núm. 4 del recurso, págs. 17-18.
[2] Véase, Apéndice núm. 5 del recurso, págs. 23-71.

obligado a pagar por esos servicios. Argumentó que el ordenamiento jurídico vigente exige que los contratos entre un ente privado y el Estado consten por escrito para que sean vinculantes. Además, la parte apelada aseveró que según las fechas detalladas en la declaración jurada del señor Navarro Santiago, las treinta y cuatro (34) facturas que, alegadamente, quedaron pendientes de pagar, fueron entregadas al Municipio luego de presentarse la acción de epígrafe. A su vez, resaltó que no se incluyó con las referidas facturas un acuse de recibo que acreditara cuándo fueron entregadas al Municipio.

Por otro lado, la parte apelada sostuvo que las facturas en cuestión no cumplían con las formalidades requeridas por los contratos celebrados, ni con las exigidas por nuestro ordenamiento jurídico, puesto que las mismas no detallaron cuál fue el funcionario municipal a quien se reportaron los empleados de Integrated, ni se anejó a las aludidas facturas copia certificada de la hoja de asistencia o documento control original que se utilizó para registrar las horas que trabajaron los referidos empleados. A tales efectos, el Municipio afirmó que las facturas en cuestión no eran líquidas ni exigibles, por lo que no había controversia en cuanto a que no existía una deuda a favor de la parte apelante. Así, pues, le suplicó al tribunal de instancia que dictara sentencia sumaria a su favor.

Con intención de respaldar sus argumentos, la parte apelada anejó a su pliego una declaración jurada de José Luis Rodríguez Rodríguez (en adelante, señor Rodríguez Rodríguez), quien para entonces era el Subdirector de la Oficina de Finanzas Municipales de San Juan, con fecha del 6 de julio de 2023. En la misma, el señor Rodríguez Rodríguez certificó que:

- La Factura número 315 fue pagada con el cheque número 574635 el día 1 de septiembre de 2017.

- La Factura número 467 fue pagada con el cheque número 574635 el día 1 de septiembre de 2017.

- La Factura número 966 fue pagada con el cheque número 230191 el día 30 de mayo de2017.

- La Factura número 482 fue pagada con el cheque número 137180 el día 28 de marzo de2017.

- La Factura número 779 fue pagada con el cheque número 228666 el día 7 de abril de 2017. El cheque 228666 no fue reclamado por lo que caducó luego de seis meses de su expedición.

- La Factura número 31856 corresponde a servicios prestados el 11 de noviembre de 2016, es decir 5 días previo a la vigencia de ambos contratos[,] por lo que el Municipio de San Juan, aun si hubiese recibido la referida factura oportunamente, está legalmente impedido de realizar el pago de esta.

- Con respecto a las restantes 34 facturas reclamadas, [c]ertificó que las mismas no han sido remitidas a la Oficina de Finanzas con las correspondientes certificaciones departamentales que acrediten la prestación de los servicios con cargo al balance disponible en la partida presupuestaria correspondiente, durante la vigencia de los contratos 2017-B00036 y sus enmiendas 2017-B00036-A hasta 2017-B00036-E; así como del contrato 2017-B00037A y sus enmiendas 2017-B00037-A hasta 2017-B00037-C.[3]

Además, la parte apelada anexó a su escrito un Contrato de Servicios de Limpieza de Oficinas y Estacionamientos en Instalaciones Municipales, suscrito por las partes de epígrafe, el 15 de noviembre de 2016, en virtud de la Subasta de la Administración de Servicios Generales con el número 16-034C, y sus enmiendas, desde la número 2017-B00036-A, hasta la número 2017-B00036-E.[4] También, incluyó un Contrato de Servicios de Mantenimientos de Áreas Verdes, el cual igualmente fue suscrito por las partes de epígrafe, el 15 de noviembre de 2016, en virtud de la Subasta de la Administración de Servicios Generales con el número 16-034C, y sus enmiendas, desde la número 2017-

---

[3] Apéndice número 6 del recurso, pág. 88.
[4] Íd., págs. 90-112.

B00037-A, hasta la número 2017-B00037-C.[5] En cuanto a las facturas en disputa, los referidos contratos disponían expresamente que:

> 5.2 LA SEGUNDA PARTE someterá una factura semanal donde se detallen los servicios prestados, el día y las horas trabajadas por sus empleados, la cual deberá ser certificada por el personal del MUNICIPIO o su representante autorizado(a), donde se acompañe una copia del registro de horas trabajadas. Además, toda factura contendrá un desglose detallado de lo siguiente:
> 5.2.1 Servicios prestados;
> 5.2.2 Periodo durante el cual se prestaron los servicios;
> 5.2.3 El lugar donde se prestaron los servicios;
> 5.2.4 El funcionario o funcionarios municipales a quien se reportó el candidato durante el periodo que trabajó;
> 5.2.5 Se acompañará copia certificada del original de la hoja de asistencia o documento control que utiliza la SEGUNDA PARTE para registrar el horario de trabajo[.][6]

En reacción, el 31 de agosto de 2023, la parte apelante presentó oposición a que se dictara sentencia sumaria a favor de la parte apelada. En su escrito, planteó que, a pesar de que la parte apelada alegó haber pagado varias de las facturas en cuestión, no presentó ninguna prueba que lo acreditara. De otra parte, aseveró que, contrario a lo alegado por la parte apelada, las referidas facturas se le entregaron antes de que se presentara la acción de epígrafe. En apoyo a lo anterior, la parte apelante anejó a su escrito los acuses de recibo que acreditaban la entrega de las facturas al Municipio. Los mismos detallan que las facturas fueron entregadas en las fechas siguientes: 7 de diciembre de 2021, 9 de marzo de 2022, 11 de marzo de 2022 y 21 de marzo de 2022.[7] Además, la parte apelante incluyó varios correos electrónicos enviados al Municipio entre los años 2017 al 2020, los cuales hacen alusión a las facturas que presuntamente estaban

---

[5] Íd., págs. 113-128.
[6] Véase, Apéndice núm. 6 del recurso, págs. 92-93 y 115. (Énfasis Omitido).
[7] Apéndice núm. 7 del recurso, págs.156-160.

pendientes de pagar.[8] Igualmente, anejó a su oposición una misiva remitida a la alcaldesa Carmen Yulín Cruz Soto, con fecha del 27 de marzo de 2018, suscrita por Héctor Vélez Torres, quien para entonces era el CEO de Integrated, en la cual le informó a la aludida alcaldesa sobre las facturas en cuestión y la falta de respuesta del Municipio.[9]

Por otro lado, la parte apelante afirmó que las facturas cumplieron con las exigencias de los contratos pactados con el Municipio. Para apoyar su argumento, adjuntó a su escrito unas hojas de asistencia de varias personas, quienes para entonces eran empleados de Integrated, de las semanas del 6 al 12 de marzo de 2017 y del 13 al 19 de mismo mes y año.[10] Además, incluyó una declaración jurada del señor Navarro Santiago, con fecha del 25 de agosto del 2023, en la cual, esencialmente, manifestó que las facturas en controversia cumplieron con todos los requisitos de forma necesarios.

Finalmente, en cuanto a las alegaciones del Municipio sobre que algunos de los servicios facturados por Integrated fueron prestados antes de que existiera un contrato vigente entre las partes, planteó que los mismos se rindieron en virtud de una orden de compra, por lo cual el Municipio estaba obligado a pagar por los referidos servicios. Ante lo expuesto, la parte apelante le suplicó al tribunal de instancia que declarara sin lugar la solicitud de sentencia sumaria a favor de la parte apelada.

El 13 de octubre de 2023, la parte apelada presentó una *Réplica* a la oposición presenta por la parte apelante. En la misma, reiteró los planteamientos que presentó en su moción en solicitud de sentencia sumaria a su favor. Además, sostuvo que los

---

[8] Íd., págs. 167-171.
[9] Íd., págs. 172-174.
[10] Íd., págs. 176-190.

documentos presentados por la parte apelante carecían del peso necesario para constituir evidencia *prima facie* en apoyo a que las facturas en cuestión cumplían con las exigencias de la normativa contractual gubernamental. Además, el Municipio anejó a su escrito copia de los cheques, presuntamente, entregados a la parte apelante en pago de los servicios rendidos, en virtud del contrato entre las partes. A su vez incluyó los desgloses de las facturas que, alegadamente, fueron pagadas con cada cheque.[11]

En reacción, el 1 de noviembre de 2023, la parte apelante presentó una *Dúplica* al escrito incoado por la parte apelada. Esencialmente, planteó que de la evidencia sometida por el Municipio no se desprendía que lo cheques fueron endosados y cobrados. Además, acentuó que los desgloses de facturas anejados a la réplica no indicaban quién los preparó y en qué fecha se creó el documento. Por ello, arguyó que los documentos presentados por la parte apelada no eran concluyentes de que el Municipio pagó por la totalidad de los servicios prestados por Integrated. Así, pues, sostuvo que no procedía que el tribunal de instancia declarara con lugar la solicitud de sentencia sumaria presentada por la parte apelada.

Evaluadas las posturas de las partes, el 12 de enero de 2024, notificada el 16 del mismo mes y año, el tribunal de instancia emitió *Sentencia*. Mediante el referido dictamen, realizó las determinaciones de hechos siguientes:

> 1. PIS suscribió y ha suscrito múltiples contratos para servicios con el Municipio para proveer y suministrar servicios de limpieza, áreas verdes, y otros para las instalaciones asignadas del Municipio, según se describe a continuación:
> 2017-B0036 vigente desde el 16 de noviembre de 2016 al 2 de diciembre de 2016
> 2017-B00036A vigente desde el 2 de diciembre de 2016 al 30 de junio de 2017

---

[11] Apéndice núm. 8 del recurso, págs. 205-213.

2017-B00036B vigente desde el 15 de diciembre de 2016 al 30 de junio de 2017

2017-B00036C vigente desde el 11 de enero de 2017 al 30 de junio de 2017

2017-B00036D vigente desde el 10 de febrero de 2017 al 30 de junio de 2017

2017-B00036E vigente desde el 15 de marzo de 2017 al 30 de junio de 2017

2017-B00037 vigente desde el 16 de noviembre de 2016 al 2 de diciembre de 2016

2017-B00037A vigente desde el 1 de enero de 2017 al 30 de junio de 2017

2. Los contratos antes descritos, están publicados en la Oficina del Contralor en constancia de su otorgamiento, términos y existencia.

3. La sección 5.2 de los contratos principales 2017-B00036 y 2017-B00037 leen como sigue:

La SEGUNDA PARTE someterá una factura semanal donde se detallen los servicios prestados, el día y las horas trabajadas por sus empleados, la cual deberá ser certificada por el personal del MUNICIPIO o su representante autorizado(a), donde se acompañe copia del registro de horas trabajadas. Además, toda factura contendrá un desglose detallado de lo siguiente:

Servicios prestados; Periodo durante el cual se prestaron los servicios; El lugar donde se prestaron los servicios; El funcionario o funcionarios municipales a quien se reportó el candidato durante el periodo que trabajó; Se acompañará copia certificada del original de la hoja de asistencia o documento control que utiliza la SEGUNDA PARTE para registrar el horario de trabajo; La cantidad total facturada por los servicios; La cantidad total facturada por la totalidad de los servicios prestados durante el periodo facturado.

4. La factura #00031856 corresponde a los servicios prestados por PIS el 11 de noviembre de 2016.

5. La factura #00000467, correspondiente a los servicios prestados por PIS del 19 al 25 de diciembre de 2016, fue pagada el 1 de septiembre de 2017.

6. La factura #00000966, correspondiente a los servicios prestados por PIS durante el mes de marzo de 2017, fue pagada el 30 de mayo de 2017.

7. La factura #00000482, correspondiente a los servicios prestados por PIS durante el 30 de diciembre de 2016, fue pagada el 28 de marzo de 2017.

8. La factura #00000779, correspondiente a los servicios prestados por PIS durante el mes de febrero de 2017, fue pagada el 7 de abril de 2017.

9. Las facturas presentadas por PIS en el caso de autos no detallan el funcionario o funcionarios municipales a quien se reportó el candidato durante el periodo en el que trabajó y no tienen acompañadas copias certificadas de los originales de las hojas de asistencia o documentos de control que se utilizan para registrar el horario de trabajo.[12]

---

[12] Apéndice del recurso, págs. 224-226.

En virtud de las antedichas determinaciones, el aludido foro declaró con lugar la solicitud de sentencia sumaria solicitada por el Municipio y desestimó en totalidad la acción de epígrafe. Respecto a la factura número 31856, el foro primario concluyó que esta correspondía a servicios prestados cinco (5) días antes de que se suscribiera el primer contrato entre las partes, de modo que la parte apelada no tenía una obligación de pagar por los referidos servicios. Ello, puesto que la doctrina aplicable a la contratación gubernamental requiere que los contratos sean por escrito. En cuanto a las otras treinta y cuatro (34) facturas que, presuntamente, quedaron pendientes por pagar, el foro primario razonó que no cumplían con los requisitos pactados en los contratos celebrados por las partes. Particularmente, porque: (1) las facturas no tenían adjuntas las copias certificadas de las hojas de asistencia o documentos de control que se utilizaban para registrar el horario de trabajo de los empleados; (2) las facturas no detallaron cuál fue el funcionario a quien se reportaron los empleados durante su periodo de trabajo; (3) no se incluyó evidencia fehaciente de la entrega oportuna de las facturas al Municipio.[13]

Inconforme, y luego de denegada una previa solicitud de reconsideración, el 3 de abril de 2024, la parte apelante acudió ante esta Curia mediante el presente recurso. En el mismo, formuló el siguiente planteamiento:

> Erró el honorable Tribunal de Primera Instancia al declarar con lugar la Moción en Oposición a Solicitud de Sentencia Sumaria presentada por el Municipio de San Juan y la Moción en Solicitud de Sentencia Sumaria presentada por el Municipio de San Juan.

Habiendo examinado el expediente que nos ocupa, procedemos a delimitar el trasfondo normativo aplicable.

---

[13] Apéndice del recurso número 10, pág. 12.

**II**

**A. Sentencia Sumaria**

La sentencia sumaria promueve una solución justa, rápida y económica para litigios de naturaleza civil en los que no hay controversia genuina sobre hechos materiales que componen la causa de acción. *Birriel Colón v. Econo y otros*, 2023 TSPR 120, 213 DPR ___ (2023); *Acevedo y otros v. Depto. Hacienda y otros,* 2023 TSPR 80, 212 DPR ___ (2023); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece que la sentencia sumaria procede cuando las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, acreditan que no existe una controversia real y sustancial respecto a algún hecho esencial y material. *González Santiago v. Baxter Healthcare,* supra*,* pág. 291.

El tribunal podrá dictar sentencia sumaria a favor del promovente, sin necesidad de celebrar un juicio, si no existe controversia de los hechos materiales que motivaron el pleito y únicamente resta aplicar el derecho a los no controvertidos. *González Meléndez v. Mun. San Juan et al.,* 2023 TSPR 95, 212 DPR ___ (2023)*; Acevedo y otros v. Depto. Hacienda y otros,* supra; *Roldán Flores v. Soto Lambert*, 199 DPR 664, 676 (2018). La sentencia sumaria únicamente procede cuando el derecho aplicable lo justifica. La Regla 36.3 de Procedimiento Civil, *supra,* dispone los requisitos con los que debe cumplir una moción de sentencia sumaria. *Oriental Bank v. Perapi et al.,* 192 DPR 7, 25 (2014).

La parte promovente de la moción de sentencia sumaria tiene que desglosar los hechos sobre los que alega no existe controversia. Además de especificar para cada uno la página o párrafo de la declaración jurada u otra prueba admisible en

evidencia que lo apoya. *Roldán Flores v. Soto Lambert*, supra, pág. 676; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Mientras que, la parte que se opone a una moción de sentencia sumaria tiene que demostrar que existe controversia en cuanto a algún hecho material. Se considera un hecho material aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Roldán Flores v. Soto Lambert*, supra. Para ello, el promovido deberá presentar una contestación detallada y específica, y refutar los hechos que entiende que están en disputa con evidencia sustancial. *Birriel Colón v. Econo y otros*, supra; *Abrams Rivera v. E.L.A.*, 178 DPR 914, 933 (2010). Si, al contrario, asume una actitud pasiva y descansa únicamente en sus alegaciones, se expone a que se dicte sentencia sumaria en su contra sin la oportunidad de un juicio en su fondo. *León Torres v. Rivera Lebrón*, 204 DPR 20, 43-44 (2020).

Cualquier duda no es suficiente para derrotar la procedencia de una moción de sentencia sumaria. La duda existente tiene que permitir concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Los tribunales solo podemos concluir que existe una controversia real y sustancial en cuanto a un hecho material, cuando el oponente presenta prueba que podría inducir a un juzgador racional a resolver a su favor. *Oriental Bank v. Perapi et al.*, supra, pág. 26.

La sentencia sumaria tampoco procede, si existen alegaciones afirmativas en la demanda que no han sido refutadas y de los documentos que acompañan la moción de sentencia sumaria surge controversia sobre algún hecho material y esencial, o cuando como cuestión de derecho no procede el remedio sumario. *Oriental Bank v. Perapi et al.*, supra, págs. 26-27.

El tribunal apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una

sentencia sumaria. No obstante, al revisar la determinación del Tribunal de Primera Instancia, únicamente podrá considerar los documentos que se presentaron ante ese foro. Las partes no podrán traer en apelación evidencia que no fue presentada oportunamente ante el Tribunal de Primera Instancia, ni esbozar teorías nuevas o esgrimir asuntos nuevos. El tribunal apelativo únicamente puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales y si el derecho se aplicó correctamente. Sin embargo, no puede adjudicar hechos materiales en disputa porque esa tarea es del foro de primera instancia. *Meléndez González v. M. Cuebas*, 193 DPR 100, 114, 116 (2015).

### B. Contratación gubernamental

La Sección 9 del Artículo VI de nuestra Constitución establece que las propiedades y fondos públicos únicamente podrán utilizarse para fines públicos, y para el sostenimiento y el funcionamiento de las instituciones del Estado. Art. VI, Sec. 9, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 429. A tales efectos, el Estado tiene la obligación constitucional de promover una sana y recta administración pública y prevenir el despilfarro, la corrupción y el amiguismo en la contratación gubernamental. *St. James Sec. v. AEE,* 2023 TSPR 149, 213 DPR ___ (2023); *Vicar Builders v. ELA et al.,* 192 DPR 256, 263 (2015). En virtud de ello, la legislatura ha aprobado una serie de estatutos especiales que imponen controles fiscales y de contratación gubernamental para cumplir con el aludido mandato constitucional y, así, proteger los intereses y recursos fiscales del Pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento contractual. *Landfill Technologies v. Mun. de Lares,* 187 DPR 794, 802 (2013); *Colón Colón v. Mun. de Arecibo,* 170 DPR 718, 725 (2007). Un contrato entre una parte privada y el Estado que no

cumple con estas leyes es nulo e inexistente. *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR 448, 456-457 (2014). A su vez, el Tribunal Supremo de Puerto Rico ha reiterado en múltiples ocasiones que se deben observar ciertas formalidades para contratar con un ente gubernamental; entre ellas: (1) reducir el contrato a escrito; (2) mantener un registro para establecer su existencia; (3) enviar copia a la Oficina del Contralor de Puerto Rico y (4) acreditar la certeza de tiempo, a saber, que el contrato se realizó y otorgó quince días antes. *Vicar Builders v. ELA et al.*, supra, pág. 264; *Rodríguez Ramos et al v. ELA et al.*, supra, págs. 461-462; *Jaap Corp. v. Depto. Estado* 187 DPR 730, 741 (2013); *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530, 537 (2011); *Ocasio v. Alcalde Mun. de Maunabo*, 121 DPR 37, 54 (1988). El cumplimiento riguroso con cada uno de estos requisitos sirve como mecanismo de cotejo y evita pagos y reclamaciones fraudulentas. *Vicar Builders v. ELA et al.*, supra, pág. 264.

Particularmente, el requisito antes esbozado, de que un contrato entre un ente privado y el Estado conste por escrito, no tiene excepción alguna. El contratista que realiza una obra sin tener un contrato escrito viola las normas de contratación gubernamental. Ello, puesto que se ha concluido que la validación de un contrato retroactivamente fomenta la corrupción. Como, por ejemplo, el contratista podría realizar la obra sin un contrato escrito para presionar su otorgamiento futuro. Así, pues, el Tribunal Supremo de Puerto Rico ha rechazado consecuentemente la aplicación de los remedios de equidad para convalidar la obligación pública cuando no existe un contrato escrito. *Rodríguez Ramos et al. v. ELA et al.,* supra, págs. 460-461.

A tenor con lo anterior, nuestro más Alto Foro local ha sido enfático en que las partes que contratan con una entidad del gobierno sin cumplir con los requisitos de contratación

gubernamental se arriesgan a asumir la responsabilidad de sus pérdidas. *Íd.*, pág. 461. Por ello, "para evitar situaciones irregulares en las que el Estado termine lucrándose injustificadamente, las partes deberán ser meticulosas al otorgar sus contratos". *SLG Ortiz-Mateo v. ELA,* 211 DPR 772, 796 (2023); *Vicar Builders v. ELA et al.*, supra, pág. 269.

### C. Contratación Municipal

En cuanto a los contratos con los municipios, el Tribunal Supremo de Puerto Rico concluyó que estos no se rigen por la teoría general de los contratos, su validez tenía que ser determinada de acuerdo con la entonces vigente Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81-1991, 21 LPRA sec. 4001 nt. *et seq.* (derogada).[14] En *Colón Colón v. Mun. de Arecibo,* supra*,* el antedicho foro se expresó específicamente sobre los requisitos que tienen que cumplir los contratos otorgados con los municipios. Al igual que todo contrato gubernamental, es indispensable que el contrato sea por escrito. Este requisito es de carácter formal o sustantivo. Su propósito es evitar pagos y reclamaciones fraudulentas e ilegales. El contrato escrito es la mejor evidencia de las obligaciones recíprocas que contraen las partes. Ello, dado a que les libra de controversias futuras sobre los acuerdos originales, puesto que los términos pactados constan de forma objetiva en el acuerdo escrito. Además, el contrato escrito protege los derechos de ambas partes en caso de incumplimiento. *Colón Colón v. Mun. de Arecibo,* supra*,* pág. 726.

Ahora bien, el Municipio, previo a suscribir un contrato, tiene que identificar los fondos de los cuales se van a pagar los servicios o bienes que se adquieren. *Íd.* Ello, dado a que "[l]os

---

[14] El 14 de agosto de 2020, mediante la aprobación de la Ley 107-2020, 21 LPRA sec. 7001, se derogó la Ley de Municipios Autónomos por el Código Municipal de Puerto Rico. Precisa señalar que la Ley de Municipios Autónomos era la legislación vigente al momento de acontecer los hechos ante nuestra consideración.

créditos autorizados para las atenciones de un año fiscal específico serán aplicados exclusivamente al pago de [...] obligaciones legalmente contraídas y debidamente asentadas en los libros del municipio durante dicho año. Artículo 8.004(a) de la Ley Núm. 81, *supra*, 21 LPRA sec. 4354 (derogado). A su vez, el Artículo 8.007(a) del aludido cuerpo normativo dispone que:

> [l]a porción de las asignaciones y de los fondos autorizados para las atenciones de un año fiscal que hayan sido obligados en o antes del 30 de junio del año fiscal a que correspondan dichas asignaciones y fondos, continuarán en los libros por un (1) año adicional después de vencido el año fiscal para el cual hayan sido autorizados. Después de ese año no se girará contra dicha porción por ningún concepto [...].
> 21 LPRA sec. 4357 (derogado).

De otra parte, el más Alto Foro judicial local resolvió en el mencionado dictamen que los contratos municipales tenían que cumplir con el entonces vigente Artículo 8.016 de la Ley de Municipios Autónomos, 21 LPRA sec. 4366 (derogado), así como con el Artículo 1 de la Ley Núm. 18 de 30 de octubre de 1975, 2 LPRA sec. 97. Ambos artículos exigen que los municipios, al igual que el Estado, mantengan un registro fiel de los contratos que suscriban y que remitan una copia a la Oficina del Contralor dentro de los quince (15) días siguientes a su otorgamiento. *Colón Colón v. Mun. de Arecibo,* supra, pág. 727.

La intención del legislador al ordenar la inscripción de los contratos gubernamentales en la Oficina del Contralor es crear un mecanismo de cotejo y publicidad. Cabe resaltar que el incumplimiento con el requisito de registrar y remitir un contrato a la Oficina del Contralor de Puerto Rico puede ser subsanado y no acarrea la nulidad. Sin embargo, su incumplimiento impide el desembolso de los fondos públicos hasta tanto los contratos no sean registrados conforme a la ley. *Rodríguez Ramos et al. v. ELA,* supra, pág. 462.

**III**

La parte apelante nos solicita que revisemos la negativa del tribunal de instancia de declarar con lugar su solicitud de sentencia sumaria. Luego de revisar de *novo* el expediente ante nuestra consideración, según requiere la normativa antes expuesta, colegimos que nuestra intervención no es necesaria, porque un análisis de la totalidad de la prueba nos convence de que el juzgador no incidió en su determinación.

Según reseñamos, el contrato escrito es la mejor evidencia de las obligaciones recíprocas que contraen las partes. *Colón Colón v. Mun. de Arecibo,* supra*,* pág. 726. Los contratos pactados por las partes de epígrafe disponían expresamente que la parte apelante debía someter ***una factura semanal*** en la cual se detallaran: (1) los servicios prestados; (2) el periodo en el cual se prestaron los servicios; (3) el lugar en el cual se prestaron los servicios; (4) el funcionario municipal a quien se reportó el empleado durante el periodo que trabajó; (5) los días y las horas trabajadas por los empleados, las cuales debían ser certificadas por el personal del municipio y un representante autorizado; (6) la cantidad total facturada por los servicios, y (7) la cantidad total facturada por la totalidad de los servicios prestados durante el periodo facturado. Además, la factura debía tener anejada una copia certificada del original de las hojas de asistencia o los documentos control que utilizaba Integrated para registrar el horario de trabajo de sus empleados.[15]

Ahora bien, evaluadas las facturas ante nuestra consideración, observamos que estas, no detallaron cuál fue el funcionario municipal a quien se reportaron los empleados durante el periodo de trabajo. Como tampoco, se anejaron a las

---

[15] Apéndice número 6 del recurso, págs. 92-93 y 115.

referidas facturas, las copias certificadas del original de las hojas de asistencia o los documentos de control que se utilizaban para registrar el horario de los empleados. La parte apelante únicamente presentó unas hojas de asistencia de las semanas del 6 al 12 de marzo de 2017 y del 13 al 19 del mismo mes y año.[16] Peor aún, del expediente no surge evidencia clara de cuándo las facturas en cuestión fueron entregadas al Municipio. Aunque la parte apelante alega que las mismas fueron entregadas a la parte apelada, antes de que se presentara la acción de epígrafe, es decir el 8 de junio de 2020, los acuses de recibo de las facturas tienen fecha del 7 de diciembre de 2021, 9 de marzo de 2022, 11 de marzo de 2022 y 21 de marzo de 2022.[17] El contrato entre las partes establecía claramente que las facturas debían ser entregadas al Municipio semanalmente. Si tomamos por cierto que las facturas fueron suministradas al Municipio en las fechas señaladas, quiérase decir que la parte apelante tardó más de cuatro (4) años en entregar las facturas a la parte apelada.

Es menester destacar que la Ley de Municipios Autónomos, *supra*, la cual estaba vigente al momento de acontecer los hechos ante nuestra consideración, advertía que los fondos autorizados para las atenciones de un año fiscal que hayan sido obligados en o antes del 30 de junio de ese año, continuarán en los libros por un (1) año adicional, después de vencido el año para el cual hayan sido autorizados. Después de ese año, no se girará contra dicha porción por ningún concepto. 21 LPRA sec. 4357 (derogado).

En virtud de lo anterior, coincidimos en que el Municipio no estaba obligado a pagar las cantidades desglosadas en las facturas ante nuestra consideración, dado a que las mismas no cumplieron con las exigencias pactadas en los contratos entre las partes, ni

---

[16] Apéndice núm. 7 del recurso, págs. 176-190.
[17] Íd., págs.156-160.

con la normativa aplicable. En cuanto a la factura número 31856, estamos de acuerdo con lo razonado por el tribunal de instancia. El Municipio no tenía una obligación de pagar por los servicios desglosados en la aludida factura, dado a que fueron prestados antes de que se suscribiera un contrato entre las partes. Conforme esbozamos, el contratista que realiza una obra sin tener un contrato escrito viola las normas de contratación gubernamental. *Rodríguez Ramos et al. v. ELA et al.,* supra, págs. 460-461.

En virtud de lo expuesto, es importante resaltar que quien contrata con una entidad del gobierno sin cumplir con los requisitos de la contratación gubernamental se arriesga a asumir la responsabilidad de sus pérdidas. *Íd.*, pág. 461.

**IV**

Por las consideraciones antes expuestas, confirmamos la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones