Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| PUNTA BORINQUEN PRECAST CORP.  Recurrente  v.  MUNICIPIO AUTÓNOMO DE SAN SEBASTIÁN  Recurrido | KLRA202500014 | REVISIÓN JUDICIAL Procedente de la Junta de Subasta del Municipio Autónomo de San Sebastián  Núm.: SM-24-25-08  Sobre: Notificación Sobre Cancelación de Adjudicación Remodelación Plaza Identidad Pepiniana |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm

Álvarez Esnard, jueza ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de febrero de 2025.

Comparece ante nos Punta Borinquen Precast Corp. ("Recurrente" o "Punta Borinquen") mediante *Solicitud de Revisión Judicial* recibida el 9 de enero de 2025. Mediante el aludido escrito, nos solicita que revoquemos la notificación sobre cancelación de adjudicación de subasta emitida el 27 de diciembre de 2024 y notificada el 30 de diciembre del mismo año por la Junta de Subasta del Municipio de San Sebastián ("Junta"). Por virtud del aludido dictamen, la Junta canceló la adjudicación de la subasta ya que la Recurrente no entregó todos los documentos solicitados dentro del término correspondiente según las condiciones generales de la subasta.

Por los fundamentos que expondremos a continuación, **revocamos** el dictamen recurrido.

Número Identificador

SEN(RES)2025_____

**I.**

Conforme surge del expediente, el Municipio de Sebastián ("Municipio") publicó un Aviso de Subasta Pública en la cual convocó a licitadores a que presentaran propuestas selladas para una obra denominada Trabajos de Remodelación de la Plaza Identidad Pepiniana, Subasta SM-25-24-08. Se desprende del expediente que, el Municipio entregó a los licitadores interesados un pliego de especificaciones el cual contenía las instrucciones, términos y condiciones que tenían que cumplir sus respectivas propuestas.

Así las cosas, el 30 de septiembre de 2024, se celebró la subasta en la cual participó como único licitador Punta Borinquen. Posteriormente, el 6 de noviembre de 2024, la Junta notificó la adjudicación de la obra a la Recurrente por la suma de un millón quinientos noventa y nueve mil dólares ($1,599,000.00).[1] De igual manera, el 26 de noviembre de 2024, el Municipio le envió un correo electrónico a la Recurrente mediante la cual solicitó cierta documentación para formalizar el contrato de servicios.[2] Del mencionado correo electrónico surge que el municipio le solicitó trece (13) documentos.

En cumplimiento con lo solicitado, entre las fechas del 27 de noviembre al 2 de diciembre de 2024,[3] Punta Borinquen remitió los documentos requeridos por el Municipio a excepción de la evidencia de pago de arbitrios y patente. Conforme a esto último, Punta Borinquen explicó por medio de una comunicación fechada el 2 de diciembre de 2024, que tenía intención de pagar los arbitrios y patentes conforme las condiciones del contrato, la

---

[1] Véase, Apéndice del Recurso, págs. 4-6.
[2] *Íd.*, pág. 7.
[3] *Íd.*, págs. 8-10.

ordenanza y las leyes aplicables, pero explicó que exigir el pago de esas partidas previo a la firma del contrato violentaba el pliego de especificaciones y el Código Municipal de Puerto Rico. Por este motivo, solicitó que continuara el proceso de formalización de contrato y las contribuciones se pagaran posterior a la firma según dispone la aludida ley y las condiciones de la subasta.

Tiempo después, el 30 de diciembre de 2024, la Recurrente notificó vía correo electrónico de una carta de seguimiento con fecha de 28 de diciembre de 2024.[4] Por virtud de esta, reiteró que cumplió con la entrega de los documentos requeridos y que el pago de contribuciones y patentes se haría posterior a la firma del contrato conforme lo establece nuestro estado de derecho.[5] No empece lo anterior, ese mismo 30 de diciembre de 2024, la Junta le notificó a la Recurrente su determinación de cancelar la adjudicación de la subasta SM-24-25-08.[6] Fundamentó su determinación en que, la Recurrente no entregó toda la documentación requerida en el proceso.

Inconforme con este resultado, el 9 de enero de 2025, la Recurrente compareció ante nos mediante el recurso de epígrafe y formuló los siguientes señalamientos de error:

> Primer Error: Erró la Junta de Subasta al emitir una notificación de Cancelación de Adjudicación de Subasta inadecuada que no cumple con los requisitos de ley.
>
> Segundo error: Erró la Junta de Subastas al Cancelar la Adjudicación a Punta Borinquen Precast por supuesto incumplimiento en entregar documentos requeridos para la firma de contrato.

El 16 de enero de 2025 emitimos *Resolución* en la que le concedimos un término de treinta (30) días la parte Recurrida para que se expresara en cuanto al recurso. En cumplimiento con

---

[4] *Íd.*, págs. 59-61.
[5] *Íd.*
[6] *Íd.*, págs. 1-3.

lo ordenado, el 10 de febrero de 2025 el Municipio compareció mediante escrito intitulado *Posición de la Parte Recurrida en Cuanto a Solicitud de Revisión Judicial.* Mediante este, en esencia, el Municipio se allanó a la solicitud de Punta Borinquen. Con el beneficio de la comparecencia de ambas partes, estamos en posición de atender la controversia ante nuestra consideración.

**II.**

### A. Estándar de Revisión Judicial de Determinaciones Administrativa

"Constituye una norma reiterada el que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado". *Hernández Feliciano v. Mun.* Quebradillas 211 DPR 99, 114 (2023) Las determinaciones de una agencia administrativa gozan de una presunción de corrección. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128 (2019). Al evaluar una determinación administrativa, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank.,* 214 DPR___ (2024) 2024 TSPR 70, pág. 9.

A tenor con lo anterior, los tribunales deben deferencia a las agencias administrativas salvo que: (1) las determinaciones no estén basadas en evidencia sustancial; (2) las conclusiones de derecho fueran incorrectas; (3) la agencia actuara de forma arbitraria, irrazonable o ilegal; o (4) que lesionara derechos fundamentales. *Super Asphalt v. AFI y otros*, 206 DPR 803, 14

(2021). En ausencia de ello, "aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida". *Super Asphalt v. AFI y otros, supra*; *ECP Incorporated v. OCS*, 205 DPR 268 (2020). Aun así, "las determinaciones de derecho pueden ser revisadas en su totalidad". *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 591 (2020).

### B. Subastas Municipales

Las subastas, así como el requerimiento de propuestas (*request for propo*sal), son los vehículos procesales disponibles para que el Gobierno de Puerto Rico, así como sus municipios, adquieran bienes y servicios. *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525 (2019). El propósito de estas herramientas es proteger el erario fomentando la libre y diáfana competencia entre el mayor número de licitadores posibles. *St. James Sec. v AEE*, 213 DPR___ (2023).2023 TSPR 149, pág. 11.

Como regla general, corresponde a cada ente gubernamental ejercer su poder reglamentario para establecer el procedimiento y las guías a seguirse en sus subastas. En el caso de los municipios, tanto las subastas tradicionales, así como el requerimiento de propuestas que adjudique una Junta de Subastas Municipal, están reguladas por la Ley Núm. 107 de 14 de agosto de 2020, conocida como *Código Municipal*, 21 LPRA sec. 4001 *et seq.,* ("Código Municipal"). El aludido Código Municipal, *supra,* establece que los municipios deberán cumplir con el procedimiento de subasta pública, salvo contadas excepciones. 21 LPRA Sec. 7211. Para ello, todo municipio constituirá y tendrá una Junta de Subastas que constará de cinco (5) miembros. Cuatro de estos miembros, serán

funcionarios municipales nombrados por el Alcalde y confirmados por la Legislatura Municipal. Mientras que el quinto miembro, será un residente del municipio de probada reputación moral, quien también será nombrado por el Alcalde y confirmado por la Legislatura Municipal. 21 LPRA Sec. 7214.

Conforme establece el Artículo 2.040 (a) del Código Municipal, *supra*, la Junta de Subasta entenderá y adjudicará todas las subastas que sean requeridas por ley, por ordenanza municipal o reglamento. 21 LPRA Sec. 7216. Cuando se trate de compras, construcción o suministros de servicios, el mencionado artículo establece como criterio de adjudicación el que la Junta adjudicará a favor del postor razonable más bajo. Además, tomará en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta. *Íd.*

No empece a lo anterior, conforme el discutido artículo, la subasta podrá adjudicársele a un postor, aunque no sea necesariamente el más bajo, o sea el más alto, si ello beneficia el interés público. En tal situación, la Junta de Subasta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifiquen tal adjudicación. *Íd.*

Los tribunales tenemos la obligación de asegurar que las entidades públicas cumplan con las disposiciones normativas aplicables y con los reglamentos y procedimientos adoptados por ellas para regir la celebración de subastas para la adquisición de bienes y servicios del sector privado. *RBR Const. SE v. AC,* 149

DPR 836, 856 (1999). También, debemos asegurar que en estos procesos se trate de forma justa e igualitaria a todos los licitadores, al momento de recibir y evaluar sus propuestas y de adjudicar la subasta. *Íd.*

Los tribunales reconocemos la discreción de las juntas de subastas, "al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general". *CD Builders v. Mun. Las Piedras,* 196 DPR 336, 348-349 (2016). No obstante, los procedimientos de subastas son procedimientos con ciertas características adjudicativas, por eso, una vez se ha tomado la decisión administrativa, la parte adversamente afectada tiene derecho a solicitar la revisión judicial. *LPC & D. Inc. v. A.C.,* 149 DPR 869, 877 (1999).

Por otro lado, el Código Municipal de Puerto Rico dispone los requisitos para los contratos de ejecución de obras y mejoras públicas:

> Contratos para la ejecución de obras y mejoras públicas. Los contratos para la ejecución de obras y mejoras públicas no se suscribirán hasta tanto:
>
> (1) El contratista evidencie ante el municipio el pago de la póliza correspondiente del Fondo del Seguro del Estado y de la correspondiente patente municipal;
>
> (2) haga entrega de la fianza prestada para garantizar el pago de jornales y materiales que se utilicen en la obra; y,
>
> (3) entregue o deposite cualquier otra garantía que le sea requerida por la Junta de Subastas.  21 LPRA sec. 7174 (c)

### III.

En el presente recurso, la Recurrida solicita nuestra intervención para que revoquemos la determinación de la Junta de cancelar la adjudicación de subasta SM-24-25-08. En su escrito, argumenta que no existía fundamento jurídico alguno

para tal proceder. Por su parte, el Municipio compareció ante esta Curia allanándose a la solicitud de la Recurrida. De hecho, en su escrito, el Municipio expresó que el proyecto de la subasta en controversia es uno subvencionado total o parcialmente con fondos federales, por lo cual requería que se materializara a la brevedad posible. Agregó que decidió allanarse a la solicitud de Punta Borinquen en aras de acelerar la ejecución de la obra y de no poner en riesgo la disposición de los fondos destinados para ello.

En vista de que, en efecto, conforme al Código Municipal de Puerto Rico, *supra*, y a las condiciones generales de la subasta no existe fundamento válido que justifique la cancelación de la adjudicación de la subasta en cuestión y toda vez, no existe reparo alguno por parte del Municipio de revertir dicha cancelación, resolvemos que la Junta incidió en cancelar la adjudicación de la subasta SM-24-25-08. Por consiguiente, corresponde revocar dicha determinación.

**IV.**

Por los fundamentos antes expuestos, **revocamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones